## Evans *versus* Maury.

1. After a sheriff's sale has been confirmed, the purchase money paid, the deed acknowledged, recorded, and delivered to the purchaser, and possession of the premises taken by him, the court has no power, upon a rule to show cause, to set aside the sale and compel the purchaser to deliver up the deed to be cancelled.

2. The delivery of the deed by the sheriff after it has been properly acknowledged, the sale confirmed, and the purchase money paid, vests the title in the purchaser. It is a good title until it is proved that he procured it by fraud upon the defendant in the execution. This must be done either in an action of ejectment or by a bill in equity.

3. Gilbert v. Hoffman, 2 Watts, 66; Jackson v. Morter, 1 Norris, 291; Shakespere v. Delany, 5 Id., 108; Connelly v. City of Philadelphia, Id., 110; Chadwick v. Patterson, 2 Phila., 275; Cooper v. Wilson, 15 Norris, 409, considered.

March 5th, 1886. Before MERCUR, C. J., GORDON, PAXSON, TRUNKEY, STERRETT and GREEN, JJ. CLARK, J., absent.

ERROR to the Court of Common Pleas of *Berks county:* Of January Term, 1886, No. 59.

This was a rule obtained by Gernant S. Maury, defendant in the execution, and Rebecca Maury, a lien creditor, upon Miller M. Evans, purchaser at sheriff sale of the real estate of Gernant S. Maury, to show cause why the sheriff's deed to Evans should not be cancelled, and the sheriff's sale of said real estate should not be set aside. This rule was granted upon the allegations of the petitioners that by a mistake in law they were led to believe that the lien of a mortgage upon this real estate would not be divested, and, as a consequence, there was an inadequacy of price. They subsequently filed an additional reason, viz., that the purchaser had perpetrated a fraud upon them, by reason of which he had succeeded in becoming the purchaser of said real estate at the said sale. The rule was made absolute by the court, HAGENMAN, P. J., filing the following opinion, from which the facts of the case sufficiently appear.

The depositions and records show that defendant, Gernant S. Maury, was the owner of a farm of 114 acres, and a tract of woodland of 15 acres, situate in Berks county, which said Maury accepted under proceedings in partition of his father's real estate in 1869, the farm at $15,000, and the woodland at $315, a recognizance was entered for the amount of the valuation money to secure the widow her dower and the other heirs their shares. In consequence of debts against the decedent's estate, the recognizance was reduced to $11,586.86. One third of this sum, to wit, $3,862.28, remains a dower charge; the widow is still living. There were three children, G. S. Maury, the defendant; Ellen, married to James Griesemer; and Catharine, married to George G. Ruth. Each of these heirs was entitled to $2,574.85 out of the remaining two thirds of the recognizance. Mrs. Griesemer was paid her present and future interest, and entered full satisfaction on the recognizance. Mrs. Ruth and her husband gave Maury a

[Evans *v.* Maury.]

receipt for $2,000 for cash received. The balance, $574.85, Maury alleges, was settled by the surrender of notes which he held against the husband. This, however, is denied by Ruth. Mrs. Ruth is dead, and claim is made by her administrator for the balance, by suit, on the recognizance. So far as appears by the depositions, the balance would seem to be due. Subsequently the property became encumbered with other liens. The first after the recognizance was a mortgage in favor of Aug. B. Hottenstein, in trust 'for Rebecca Maury, the wife of the defendant, for $7,200. The next was a judgment in favor of Miller M. Evans, the plaintiff, for $5,000.

In the spring of 1883, Evans having occasion to raise money, applied to his counsel, Mr. Bard, to have him dispose of his judgment of $5,000. An examination of the records revealed the fact that the wife's mortgage was a prior lien. After inquiring into the financial condition of Maury, Evans' counsel advised him to purchase the farm and woodland, the better to secure himself, even if he had to give a thousand dollars more than the property was worth. Accordingly, in the fall of 1883, Evans went to Illinois to see Maury, when an agreement was arrived at between Evans and Maury and Mrs. Maury, whereby Evans agreed to give $14,000 for the farm and woodland. It was also agreed that Evans' judgment of $5,000 should constitute part of the consideration money, and if the other liens, with the mortgage, exceeded the difference between $5,000 and $14,000, then the mortgage was to abate to that amount, and continue and remain a lien on the property at five per cent. Evans took some of the title papers with him when he returned home, to have the necessary deeds prepared by his counsel, and have the same forwarded to Maury and his wife for execution. A more thorough examination of the records disclosed the fact that the recognizance in favor of Catharine Ruth was unsatisfied. Correspondence was then commenced in relation to it between Evans, his counsel, and Maury. Thereupon Maury mailed to Mr. Bard the receipt of Catharine Ruth and her husband for $2,000, given on account of her share secured by the recognizance, and with it a statement showing a settlement of the balance by notes and due bill, which Maury held against the husband. No claim was ever after made by Mrs. Ruth in her lifetime, nor by any one after her death, until it was discovered that the recognizance was not satisfied. Notwithstanding the adjustment which Maury alleged he had made with Mrs. Ruth for her full share, he was extremely urgent on Evans and his counsel to have a settlement made of the claim then made on behalf of her estate. He wrote that he was willing to take a thousand dollars less for the farm and

[Evans v. Maury.]

woodland.   The correspondence thus begun was continued to and into the fall of 1884, and one or two letters passed between the parties after Evans had had an execution issued on his judgment, and had the farm and woodland levied upon for sale by the sheriff.   The sale was held on the 6th of December, the Saturday before the return day of the writ on the following Monday, and the property was purchased by Evans for $110.   The deed was acknowledged in open court on the 20th of December, and immediately taken to the prothonotary's office, and in order to secure an early record of it on the same day, an extra fee was paid to the prothonotary. Within a week Evans went to the premises and secured possession by making a new lease with Maury's tenant.   After all this had been done Maury was notified that his property had been sold by the sheriff, and that Evans was the purchaser.

By the sale Evans took the property discharged from Mrs. Maury's mortgage of $7,200.   In other words, he takes it at his bid of $110, with the only additional payment of the dower interest on the sum of $3,862.28 during the lifetime of the elder Mrs. Maury, who is now well advanced in years, and at her death the further payment of one third of the dower charge, $1,287.43, to the heirs and legal representatives of Catharine Ruth, deceased.   The other two thirds of the dower charge being the property of Maury, passed by the sale to Evans.   If a motion had been made to set aside the sheriff's sale before the deed was acknowledged, and the facts here stated had appeared to the court, the sale would certainly have been set aside.   Now that the deed has been acknowledged and delivered to the purchaser, has the court the power to direct the deed to be cancelled, and set aside the sale?

The Orphans' Court will set aside a sale for mere inadequacy of price, but the Common Pleas will not unless the price is so grossly inadequate as to shock the common sense of the court.   Where there is a clear case of inadequacy of price the court will seize hold of a slight irregularity to set aside the sale.   The time to take advantage of any irregularity is before the sheriff's deed is acknowledged; when that is once done all irregularities are cured.   But where there is fraud on the part of the purchaser, the rule is otherwise.   In such a case the court will grant relief and set aside a sale, although the deed has been acknowledged.

It requires no citation of authorities to show that where the purchaser at a sheriff's sale has been guilty of a fraud, the sale cannot be used as a means to transmit title to him.   In Gilbert v. Hoffman it was held that where one enables him-

[Evans *v,* Maury.]

self to become a purchaser of land at a sheriff's sale by the
commission. of a fraud, no title is vested in him by the
sheriff's deed. A claim set up under such circumstances
would be speedily disposed of in an action of ejectment or on
a bill in equity. We think the fraud may also be reached in
an application to strike off the acknowledgment of a sheriff's
deed and to set aside the sale, one or two authorities will
suffice. In Jackson to use *v.* Morter, 1 Nor., 291, it was held
that the court has power to strike off the acknowledgment of
a sheriff's deed, and set aside a sheriff's sale for fraud, if ap-
plication be promptly made, where deed has not been deliv-
ered. In that case the deed was acknowledged at the Sep-
tember Term. On the 20th March following the rule was
granted to show cause why the acknowledgment should not
be stricken off and the sheriff's sale set aside. Two terms,
December and February, had intervened. Chief Justice
MERCUR said : The court may, for sufficient cause, set aside
the sale before the deed has been acknowledged, is very
clear. That it may exercise a like power after acknowledg-
ment, but at the same term, appears to be conceded by the
authorities, whether it may after the term at which the deed
was acknowledged, and after being duly recorded and de-
livered, does not appear to have been distinctly ruled by the
court.

In the case of Shakespeare *v.* Delany, 5 Nor., 108, in the
*per curiam* opinion Chief Justice AGNEW says, Charles Delany
being himself the purchaser at sheriff's sale as well as an en-
cumbrancer, clearly had a right to waive the effect of the deliv-
ery of the deed to him, and surrender it for cancellation with
the permission of the court. The facts of that case showed
there was no delivery of the deed to the purchaser, but Chief
Justice AGNEW expressed what he regarded as the law, the
power of the court to direct a deed to be cancelled after it had
been acknowledged and delivered to the purchaser, and to set
aside the sale.

Chadwick *v.* Patterson, 2 Phila. R., 276, was a case where
the purchaser, after the deed had been acknowledged, came
into court and asked to have it cancelled. There was no fraud,
only a misdescription that seriously affected his rights. Judge
SHARSWOOD said, we vacated such acknowledgment at the in-
stance of the purchaser, where he has produced the deed itself
and delivered it up to be cancelled. In all other cases it has
been refused with an intimation however, that we did not
mean to preclude ourselves from interfering in a case of
fraud.

In Chadwick *v.* City of Philadelphia, 5 Nor., 110, the deed
was executed and acknowledged by the sheriff, and delivered

to the purchaser. It was done by mistake ; a rule to show cause: why the sale should not be set aside was still pending. The court ordered the deed to be returned to the prothonotary for cancellation. This was assigned for error. Judge GORDON, in the opinion, said that a court may intervene to protect such a creditor, where it has reason to believe that his rights have been compromised, either through mistake or fraud, is not. doubtful. In Vauerman v. Cooper, 4 Clark, 219, Judge LOWRIE, after discussing frauds in relation to sheriffs' sales, used this language : "If any of these frauds are discovered, even after the deed is confirmed and before delivery, I do not know why they cannot be made a ground of setting aside the sale on motion without the need of a formal trial. Nor do I see anything to prevent the court from interfering, even after the deed has been delivered, if the money still remains in court undistributed."

Cooper v. Wilson, 15 Nor., 409, was cited and relied upon as sustaining a contrary principle from what I have stated. As an authority it is conclusive that the acknowledgment of a sheriff's deed cures all irregularities, such as misdescription, inadequacy of price, &c., but it goes no further. Indeed it recognizes the law as I have stated it. The facts are briefly as follows : Minnis was the owner of a lot of ground on which he executed a mortgage. He afterwards sold one half of this lot to Wilson, the mortgage remaining a lien on it. Subsequently the mortgage was foreclosed, and the whole lot sold to Cooper and deed acknowledged and delivered before Wilson learned that his half of the lot was sold. He presented his. petition, setting forth these facts and prayed the court to cancel. the deed and set aside the sale. The court below made such, an order. It was put on the ground of misdescription and inadequacy of price. The property was worth from $3,000 to $3,500, and it was sold by the sheriff for $766. Judge PAXSON said that this is an admittedly hard case, and from the tenor of the opinion he had regrets that he was compelled to; reverse the court below. He further said, we have looked; through this record in vain to find something upon which we could sustain the action of the court below. The property was sold under a valid judgment and upon legal process. The sale was duly advertised and a bill posted on the premises. It it true no bill was posted upon the half of lot owned by Cooper, the *terre* tenant. The writ followed the mortgage and described it as one property. We have no doubt that relief might have been granted for the misdescription, had an application been made in proper time. But it was too late after acknowledgment and delivery of the deed and payment of the purchase. money. There must be a point of time when such irregulari-

2 AMERMAN—20

ties are cured. The law fixes the acknowledgment of the sheriff's deed as that time. Were we to relax this rule we might imperil titles. There was no fraud on the part of the purchaser. The court below concedes that he contemplated no fraud until after the sheriff's sale. If this is so, and there is nothing in the case to gainsay it, the mere fact that the purchaser was disposed to hold on to an unexpectedly good bargain does not make out a case of such fraud as the law can recognize. It is clear from this language that if the purchaser had been guilty of fraud before the sale, the judgment of the court below would not have been reversed.

The next inquiry is, was there fraud on the part of Evans? Fraud consists as well in the suppression of what is true as in the representation or suggestion of what is false. No principle is more firmly settled, that the concealment of a material fact by design or mistake, however innocently made, avoids a contract on the ground of a legal fraud. When Evans entered into a contract with Maury and Mrs. Maury for the sale of the farm and woodland, and took with him the title papers to have the necessary deeds prepared for the conveyance of the property, and especially when he assumed the part of agent in the settlement of the balance alleged to be due on the recognizance, a relation of trust and confidence was thereby established between Evans and Maury and Mrs. Maury, which rendered it inequitable on the part of Evans to acquire the title to the property by a judicial sale and wholly destroy the claim which Mrs. Maury had by her mortgage, without notice to Maury and Mrs. Maury. It would have been a breach of faith on the part of Evans to have allowed the property to be sold by the sheriff or by any one; much more so to procure such a sale upon his own judgment. Evans had agreed to give $14,000 for the property. In his deposition he states that it is worth at least $12,000, and at the sheriff's sale he buys it for $110. Does any one suppose that if Maury and Mrs. Maury had known of the sale, that Evans could have bought the property for such an insignificant sum? Mrs. Maury could have bid the property up beyond the amount of her mortgage and would not have been required to pay more than the small balance alleged to be due on the recognizance. Maury says he knew nothing of the sale until after the property had been sold and was then first told of it by a neighbor who got his information from a Reading newspaper. As late as September 22d, 1884, Maury wrote to Evans' counsel, stating: "You wrote me some time ago stating Ruth wanted $500 more out of estate. I answered, to satisfy Evans, I would take $600 less for the farm than what Evans was to pay. Ruth $500 and you $100 to straighten out matters and you never said yes or no, if that was not

satisfactory. I do not know what you mean. Maury received no notice from Evans or his counsel in regard to the sale of the farm until after the sheriff's deed had been acknowledged and delivered to Evans. Nor was any notice given to Mrs. Maury. Under these circumstances, the sale of the property by the sheriff on Evans' judgment was a breach of good faith, and a fraud on Maury and Mrs. Maury. The principle ruled in Matthew's Appeal, 8 Out., 444, applies to this case. It was there held, " the relation of landlord and tenant is a confidential relation, so far as to render it inequitable for a tenant who is also a lien creditor, to issue execution and buy the property at a sheriff's sale without notice to his landlord. Some of the authorities say that the application, to set aside a sheriff's sale, must be made at the same term at which the deed has been acknowledged. Others extend the time : Stevens v. Stevens, 1 Phila. R., 108. As to rule to show cause why judgment should not be opened and also to set aside sheriff's sale after the acknowledgment of sheriff's deed, in the opinion Judge LOWRIE said : " But it is further objected that the parties come too late in asking the interference of the court, because a term has passed both since the judgment and since the acknowledgment or confirmation of the deed. We do not think so. I cannot help thinking that the assertions, so often made, that no court can reverse or amend its own final judgment for errors of fact or law, after the term at which they were entered is, so far as our practice is concerned, little else than a humbug, useful only to frighten ignorance and rashness from meddling with matters too great for their comprehension."

In Jackson v. Morter, above mentioned, after referring to some authorities, and after discussing the question as to whether the court, at the same or at a subsequent term, can interfere after a sheriff's deed has been acknowledged and delivered to the purchaser, Chief Justice MERCUR said, much must depend on whether the sale or acknowledgment was made through fraud, and with what promptness the application is made, to avoid the sale.

This I am inclined to regard as the true rule. A party knowing the fraud cannot lie by and wait until it suits his convenience to move. He must act promptly and diligently. If he delays, the court will not in this summary way grant him relief, but will compel him to resort to his action of ejectment or bill in equity.

Maury lives in the State of Illinois. As soon as he learned that his property had been sold by the sheriff, he at once opened a correspondence with counsel at Reading. Some letters passed between himself and his counsel before the counsel was sufficiently informed of the facts to prepare the neces-

[Evans *v.* Maury.]

ṡary papers to move the court for relief.   There was no delay,
action was. as promptly taken as the circumstances of the case
admitted.   The application to strike off the acknowledgment
of the deed and set aside the sale, was   made during the same
term at which the deed had been acknowledged. ' The Act of
6th February, 1868, increased the number of the terms of the
Court of Common Pleas of Berks county from four to eleven.

The Act was passed to expedite the business of the court.
It provides that the terms shall commence on the second Mon-
day of each and every month, except the month of July.  And
all writs for the commencement of actions, and all executions
shall. be made returnable on the first day of each and every
term of said court, excepting writs of *venditioni exponas* and
*levari facias,* which shall be returnable on the first day of the
terms of said court in February, April, June, August, October
and December.   Thus six terms were established for the sale
of real estate by the sheriff.   The December term began on
the 8th of December, 1884.   The deed was acknowledged on
the 20th.   This application was made on the 2d of February,
1885, and February term began on the 9th.  Technically there-
fore the application to set aside the sheriff's sale was made at
the same term in which the deed was acknowledged.

Since the present age has demanded greater dispatch in the
courts, and divided the year into more and shorter terms, the
court will not confine themselves to the term, but will ascer-
tain whether under all the circumstances of the case the party
seeking relief acted promptly and made his application in a
reasonable time.

Evans having acquired title to this property through a
breach of faith with Maury and Mrs. Maury, he can take noth-
ing by the fraud which he has practiced on them.  Maury
having promptly and within a reasonable time after notice of
the fraud, presented his petition to the court, he is entitled to
have relief by this proceeding from the wrong which was done
him.

And now, 14th September, 1885, it is ordered that the sale on
the *venditioni exponas* above named be set aside, the acknowledg-
ment of the sheriff's deed be rescinded, and that Miller M.
Evans deliver up the deed to the sheriff to be cancelled.   It is
further ordered, the prothonotary is directed to note this order
on the margin of the page in the docket wherein is recorded
or registered this deed in question.

Miller M. Evans thereupon took this writ assigning for error
the decree of the court making the rule absolute.

. *George F. Baer* (*William P. Bard* with him), for plaintiff
in error.—Can the court after a sheriff's sale has been con-

firmed, the deed acknowledged, recorded, and delivered to the purchaser, and possession taken by him, in a summary proceeding like this, set aside the sale, and compel the purchaser to deliver up the deed to be cancelled?

The court held that it could and cited as authority, Jackson v. Morter, 82 Pa. St., 291; Vauerman v. Cooper, 4 Clark, 372; Shakespeare v. Delany, 5 Norris, 108; Chadwick v. Patterson, 2 Phila., 275, and Connolly v. Philadelphia, 5 Norris, 110.

It is too clear for argument that none of these authorities establish the doctrine laid down by the court. On the other hand, the contrary doctrine is well supported by authority and reason.

In Fahinger v. Fahinger, 14 Phil., 623, the application was made after the delivery of the deed. One of the grounds was fraud.

Judge ELWELL said: "It would be profitless now to discuss the very peculiar facts disclosed by the depositions, as the court is powerless to redress the alleged wrong done to the plaintiff in this rule. Where the justice of the case requires, the court may set aside a sheriff's sale after the deed is acknowledged, but yet remains in the hands of the sheriff: Shakespeare v. Fisher, 11 Phila., 251; 1 Phila., 108; Jackson v. Morter, 1 Nor., 294. But this is the extent to which the courts have gone: 2 Miles, 266. After the deed is acknowledged and delivered the court has no jurisdiction to interfere: Carr v. Neal, 1 W. N. C., 41; Wood v. Bancroft, Id., 372; Paul v. Dych, 2 Id., 478. The rule is the same in regard to personal property and delivery.

In regard to real estate, if there be want of power to sell or gross fraud is alleged, the purchaser has a right to trial by jury: per MERCUR, J., in Jackson v. Morter. In Carr v. Neal it was said that relief in such cases must be in equity.

If the court had the power to order the cancellation of the sheriff's deed, on the ground of fraud, the evidence did not establish any fraud on the part of the purchaser.

The learned judge, in his anxiety to correct an apparent hardship, has not given due weight to the evidence. He seems, in a general way, to have accepted the statements of Maury's attorneys, not sworn to, as true.

D. N. Schaeffer (Adam B. Rieser with him), for defendant in error.—Can the court, on petition and answer, set aside a sheriff's sale, and order the cancellation of the deed after it is delivered, where the purchaser has been guilty of fraud?

The acknowledgment by the sheriff of a deed executed by him cures all irregularities in the sale: Stroble v. Smith, 8 Watts, 280; Steele v. Hull, 14 Norris, 497.

But the acknowledgment is not such *res adjudicata*, as precludes an inquiry into the legality of the proceedings: Braddee *v.* Brownfield, 2 W. & S., 271.

The absence of authority or the presence of a fraud utterly frustrates the operation of a sheriff's sale as a means of transmission of title, and may be insisted on after the acknowledgment: Shields *v.* Miltenberger, 2 Harris, 76.

"A fraud or defect in the sale may, perhaps, not be perceived in time for an objection to the acknowledgment, and to preclude an inquiry into it afterwards would introduce a very short and severe judicial statute of limitations:" Cash *v.* Toser, 1 W. &. S., 529.

If, then, there is fraud or a defect in the sale, when must the application be made to obtain relief? Chief Justice MERCUR, in Jackson *v.* Morter, 1 Norris, 294, says: "That the court may, for sufficient cause, set aside the sale before the deed has been acknowledged, is very clear. That it may exercise a like power after acknowledgment, but at the same term appears to be conceded by the authorities. Whether it may, after the same term at which the deed was acknowledged, and after being duly recorded and delivered, does not appear to have been distinctly ruled by this court." In another part of the opinion, he says: "Much must depend whether the sale or acknowledgment was made through fraud, and with what promptness the application is made to avoid the sale:" Connelly *v.* The City of Philadelphia, 86 Pa. St., 110; Shakespeare *v.* Delany, 86 Pa. St., 108; Chadwick *v.* Paterson, 2 Phila., 276; Cooper *v.* Wilson, 13 Norris, 409.

The plaintiff in error further argues, that "the purchaser has the right in a common law court to a trial by jury." If the purchaser had such a right, he never asked for it. He submitted the whole question on its merits, and it is now too late, after decree, to object or ask for a trial by jury, the cause having already been tried in a competent tribunal. "A party who seeks a trial in one forum has no right to shift his case into another, to avoid a judgment against him:" Seip's Appeal, 2 Casey, 177. Having submitted a case on its merits to a competent tribunal without objection, it is too late after judgment or final decree has been entered, to ask for a trial by jury: Souder's Appeal, 7 P. F. S., 498; Barne's Appeal, 3 Gr., 315; White's Estate, 11 Phila., 100.

"The complaint that she was deprived of trial by jury is groundless. This could have been had for the asking, but it nowhere appears that it was demanded and denied by the auditor:" Bloom's Appeal, 10 Out., 501.

Can the plaintiff in error, after final hearing, and after he submitted his whole case on its merits without objecting to

[Evans *v.* Maury.]

the form of the application, and without asking for a trial by jury, object to the form in which the decree was obtained?

That Maury and his wife might have filed a bill in equity to have the deed in question cancelled, cannot be doubted, because courts of equity and courts of law have concurrent jurisdiction of cases of fraud. But whether they presented their petition or filed their bill is not a question of jurisdiction, but only a question of form. "Whether a case may be brought in the chancery form is only a question of form and not of jurisdiction; and the objection is waived, if not made in due season:" Brightly's Equity Jurisprudence, p. 49; Neel *v.* Neel, Troubat & Haly, sec. 91; Adams *v.* Beach, 1 Phila., 101; Bank of Ky. *v.* Schuylkill Bank, 1 Par., 218, 222.

"An objection to the jurisdiction of the court, which goes not to its judicial powers, but to the mode in which the case is brought before it, will not avail the defendant, after a general appearance and plea filed:" Schenly *v.* Allegheny, 12 Casey, 29; Jordan *v.* Cooper, 3 S. & R., 589.

Mr. Justice PAXSON delivered the opinion of the court, April 19th, 1886.

This record raises the single question, whether the Court of Common Pleas can, after a sheriff's sale has been confirmed, the purchase money paid, the deed acknowledged, recorded, and delivered to the purchaser, and possession of the premises taken by him, in a summary proceeding upon a rule to show cause, set aside the sale and compel the purchaser to deliver up the deed to be cancelled. The court below thought it had such power, and exercised it, of which ruling the plaintiff in error, who was the purchaser at the sheriff's sale, complains.

The sale was made on the 6th day of December, 1884; the sheriff's deed was acknowledged December 20th, 1884. On the same day the deed was recorded and delivered to the purchaser, who took possession of the premises a few days thereafter by obtaining a lease from the tenant in possession. On February 2, 1885, the defendant in error presented his petition in the court below, and obtained a rule on the plaintiff to show cause why he should not deliver up his deed to the sheriff to be cancelled and receive the purchase-money paid by him, and to have the confirmation of the sale stricken off and the sale set aside. The petition upon which this rule was granted contained two grounds only, upon which such relief was asked, viz., 1, a mistake in law by which the petitioners were led to suppose that a mortgage held by Rebecca Maury, one of the defendants in error, and the wife of Gernant S. Maury, the other defendant, for $7,200, would not be discharged by the sale; and 2, inadequacy of price. In point of

fact the mortgage was discharged by the sale, and the price was inadequate, such inadequacy resulting solely from the discharge of the mortgage.

Neither of these grounds would of itself be sufficient to set aside the sale even before confirmation. Hence we find that on May 19th, 1885, a supplemental petition was filed setting up for the first time the allegations of fraud upon which the court below subsequently, to wit, on September 14th, 1885, made the rule absolute. The matters alleged in the second or supplemental petition were as well known to the petitioners when the original petition was filed on February 2, as when their supplemental petition was filed in September. If the case turned upon a question of time; if it was essential to show that the proceedings to set aside were commenced within the term at which the sale was confirmed, it would be a serious question whether the defendants could avail themselves of their first abortive petition, and would not be confined to the one on which the court below rested its decision. But we decide the case upon other grounds.

The decision of the court below goes beyond any case yet decided by this court. There is no doubt of the correctness of the principle announced in Gilbert *v.* Hoffman, 2 Watts, 66, that " where one enables himself to become a purchaser of land at a sheriff sale by the commission of a fraud, no title is vested in him by the sheriff's deed, and the former owner of the land may recover the same in ejectment, without offering to refund to the purchaser the money which he had paid to the sheriff."

While a party defrauded in this manner may recover in ejectment, treating the sheriff's deed as a nullity by reason of the fraud, or perhaps file a bill in equity praying that the sheriff's deed may be delivered up to be cancelled, the serious question confronts us whether a judge may accomplish the same results in a summary proceeding, upon a rule to show cause. If he has such power, it is a very great one, and should be exercised with caution, as it deprives the party of his right of trial by jury upon questions of fact.

The fraud we are considering is a fraud, if fraud there be, upon the defendant in the execution, not a fraud upon the court. We will not, therefore, discuss the question how far the court may go in vindication of itself when imposed upon by a fraud. This discussion will be confined to a fraud between the parties.

The learned court below evidently relies to a considerable extent upon the case of Jackson *v.* Morter, 82 Penn. St. Rep., 291. All that case decided was that the court had the power to strike off the acknowledgment of a sheriff's deed and set aside a sheriff's sale for fraud, if application be promptly made,

[Evans v. Maury.]

and the deed has not been delivered. "Whether it may," said Justice MERCUR, "after the term at which the deed was acknowledged, and after being duly recorded and delivered, does not appear to have been distinctly ruled by this court." So that Jackson v. Morter left the question we are considering just where it found it.

Nor do the other authorities cited by the learned judge below sustain him. Shakespeare v. Delany, 86 Pa. St. Rep., 108, was an application by a purchaser at a sheriff's sale to be relieved of his bid under circumstances which fully justified the court in granting the relief prayed for. It has no application to the case in hand. In Connelly v. The City of Philadelphia, there was a motion to set the sale aside prior to the acknowledgment of the sheriff's deed. The deed was executed, acknowledged and delivered after the motion and pending the rule. Whether this was the result of mistake or fraud was not material, as the court having its grasp upon the case could not be defeated in this manner. Chadwick v. Patterson, 2 Phila. R., 276, was a case before Judge SHARSWOOD at Nisi Prius, where the purchaser, after the deed had been acknowledged, came into court and asked to have it cancelled. It was said by that learned jurist: "It is exceedingly doubtful whether the court has any power over a sheriff's deed after it has been acknowledged. We have vacated such an acknowledgment at the instance of the purchaser where he has produced the deed itself and delivered it up to be filed and cancelled. In all other cases it has been refused, with an intimation, however, that we did not mean to preclude ourselves from interfering in a case of fraud. Even then it is a question whether the plaintiffs ought not to be left to their remedies." In Cooper v. Wilson, 96 Pa. St. Rep., 409, the court below set aside the sale after the deed had been acknowledged by the sheriff, and delivered to the purchaser, upon the ground of fraud and inadequacy of price, which ruling was reversed by this court. We held that there was no fraud; that mere irregularities in the sale were caused by the acknowledgment; and that inadequacy of price alone was not sufficient to set aside a sheriff's sale. So far as this case is authority upon the point now under consideration it is against the power of the court.

These are all the authorities that we need refer to. They leave the question practically untouched, and we are not concluded by past decisions. We therefore approach it as a new question.

We are in no doubt as to the proper rule. The delivery of the deed by the sheriff after it has been properly acknowledged, the sale confirmed and the purchase money paid, vests the title in the purchaser. It is a good title until it is proved

that he procured it by a fraud upon the defendant in the execution. This raises a question of fact, involving in most instances, a conflict of testimony. How is this question to be determined? There are two remedies well known to the profession. One is by an action of ejectment at the suit of the injured party, wherein if he can establish the fraud to the satisfaction of a jury, the sheriff's deed goes for nothing, and he can recover the possession of the premises. In this form of proceeding the rights of the parties are strictly guarded, and the question of fraud passed upon by a jury.. The other remedy is by a bill in equity, where the judge sitting as a chancellor, aided by a master, and if necessary by a jury, has the case before him upon bill, answer and proofs, and may, if the facts justify it, declare the deed void and order it to be delivered up to be cancelled.

But it is a very great stretch of power, far greater than any chancellor ever exercised, to dispose of such grave questions in a summary manner. We cannot concede the power to any single judge of wresting a man's title from him upon a rule to show cause. And not only his title, but his reputation as well. With the loss of his land upon an allegation of fraud ·the little of reputation that is left is not worth much. We grant the power of the Common Pleas to supervise its process, be it execution or otherwise, and lay its hand heavily upon any fraud which may occur in the course of the proceedings. This is true so long as the proceedings are within its grasp. But after they are completed and ended there must a time come when the power of the court to interfere summarily for the correction of supposed evils shall cease. When shall that time be? If not with the delivery of the deed, how shall we fix the time? Shall we say at the same term of the court, or the next term, or the next year? And if we say at the same term at which the deed was acknowledged, why not the next term? Why should relief be granted in such case on the last day of one term and denied on the first day of the succeeding term? We are not now dealing with a question of a mistake, or the misprision of a clerk in making up a record. Such errors may be corrected at any time during the term for the reason that the record is supposed to remain in the breast of the court until the term ends. There is no record here that needs to be amended; no mistake to be corrected; but there is an allegation of fraud entirely *dehors* the record, by which a man's title to lands is sought to be wrested from him. Surely this should not be done excepting by the judgment of his peers and the law of the land.

If the proceeding be by an action of ejectment or a bill in equity on the part of the owner alleged to have been de-

[Memmert v. McKean.]

frauded, such proceeding can be reviewed in every stage thereof by this court after final judgment or decree. In this way the rights of the parties can be preserved and full justice be done in an orderly manner.

No case could better illustrate the soundness of the foregoing views than the one in hand. Every allegation of fraud is flatly denied, and a careful examination of the depositions shows that the alleged fraud is more than doubtful. The testimony in support of it is weak and inconclusive. We are of opinion that it was error to dispose of it in this summary way. The parties should have been left to the remedies usual and proper in such cases.

> The order of September 14th, 1885, setting aside the sheriff's sale, and ordering the deed to be delivered up for cancellation, is reversed and set aside at the costs of the defendants in error.