ELBERT THOMSON *vs.* ALBERT RITCHIE AND JOHN E. SEMMES, TRUSTEES, AND I. S. FILBERT, PURCHASER.

*Trustees' Sale—Highest Bidder—Exceptions.*

A trustee's sale, fairly made, will not be set aside because a person unknown to the auctioneer or to the trustee, wrote a letter on the day of the sale to the auctioneer authorizing a higher bid to be made, and enclosing the required deposit, when such person is not present at the sale, and the trustee is not aware that he would be able or willing to make the first cash payment and give security for the deferred payments, and when the party objecting to the ratification of the sale is a former purchaser of the property who had failed to pay all of the purchase money, the re-sale being at his risk.

*Held,* upon the facts of this case that an exception to the ratification of the trustee's sale upon the ground of inadequacy of price should not be sustained.

Appeal from an order of the Circuit Court of Baltimore City (DENNIS, J.), overruling exceptions to a trustee's sale and finally ratifying the same. The case is stated in the opinion of the Court.

The cause was argued before BRYAN, MCSHERRY, FOWLER, PAGE and ROBERTS, JJ.

*William A. Fisher* and *C. Ross Mace,* for the appellant.

The price for which the property was resold was greatly inadequate, and this fact should be considered in connection with the other objections to the sale. *Johnson* v. *Dorsey,* 7. Gill, 292 ; *Glenn* v. *Clapp,* 11 G. & J. 9 ; *Loeber* v. *Eckes,* 55 Md. 3 ; *Andrews* v. *Scotton,* 2 Bland, 644 ; *Tomlinson* v. *McKaig,* 5 Gill, 277.

The trustees did not use their best endeavors to obtain the highest price for the property. (*a.*) Because they unreasonably refused to adjourn the sale to a more advanta-

geous time. *Bateman on Auctions*, 115, note *a ;* 246, note
*b ; Perry on Trusts*, sec. 771 ; *Bell* v. *Webb*, 2 Gill, 169 ;
*Gould* v. *Chappell*, 42 Md. 470 ; *Large* v. *Ditmars*, 27 N. J.
Eq. 406 ; *Ord* v. *Noel*, 5 Madd. 440 ; *Brock* v. *Rice*, 27
Gratt. 816.   (*b.*) Because their conduct at the sale was such
as to create misunderstanding and discourage bidders. *Hil-
leary* v. *Thompson*, 11 W. Va. 113 ; *Dawson* v. *Drake*, 29
N. J. Eq. 383 ; *Wetzler* v. *Schauman*, 24 N. J. Eq. 60 ; *Rea*
v. *Wheeler*, 27 N. J. Eq. 292 ; *Campbell* v. *Gardner*, 11 N.
J. Eq. 423 ; *Hintze* v. *Stengel*, 1 Md. Ch. 283 ; *Andrews* v.
*Scotton*, 2 Bland, 644.

The property was not sold to the highest bidder.   It is
not necessary that a person should be present at an auction
to become a purchaser.   He may make his bid by letter.
*Tyree* v. *Williams*, 3 Bibb (Ky.) 365 ; *Dickermann* v. *Bur-
gess*, 20 Ill. 266.   Bids are not to be considered nominal.
*Cornell* v. *McCann*, 48 Md. 604.

*Joseph W. Hazell* (with whom was *George R. Willis* on
the brief), for the appellee, Filbert, cited : *Stephens* v. *Ma-
gruder*, 31 Md. 171 ; *Schaeffer* v. *O'Brien*, 49 Md. 253 ;
*Gray* v. *Viers*, 33 Md. 22 ; *Kelso* v. *Jessop*, 59 Md. 119 ;
*Farmers' Bank* v. *Clark*, 28 Md. 145 ; *Manahan* v. *Lam-
mon*, 3 Md. 463 ; *Wilson* v. *Miller*, 30 Md. 82 ; *Elliott* v.
*Knott*, 14 Md. 121 ; *Davis* v. *Helbig*, 27 Md. 453 ; *Lender-
king* v. *Rosenthal*, 63 Md. 28 ; *Garritee* v. *Popplein*, 73
Md. 322.

*Steele, Semmes & Carey*, for the trustees.

BRYAN, J., delivered the opinion of the Court.

On the twenty-second day of July, eighteen hundred and
ninety-two, a decree was passed by the Circuit of Baltimore
City for the sale of certain real estate, known as the Water's
Wharf property.   The decree was passed for the purpose
of dividing the proceeds of sale among heirs.   On the fifth
day of January, eighteen hundred and ninety-three, the

property was offered for sale by public auction, but no bid was obtained. Afterwards it was sold at private sale to Elbert Thomson for thirty thousand seven hundred and fifty dollars, whereof five hundred dollars was to be paid in cash, and the remainder when the sale should be ratified. A broker was paid by the trustees seven hundred and fifty dollars for negotiating this sale. It was finally ratified on the twenty-fifth of February. The purchaser having made only the cash payment of five hundred dollars, the trustee, on the eleventh of March, filed a petition for a resale, and on the twentieth of April, a resale was ordered by the Court. On the fifteenth of May, by consent of the trustees and the purchaser, the order for resale was rescinded, and an order was passed providing that the purchaser should pay costs, expenses, &c., and should also pay six thousand dollars on account of the purchase money; and that thereupon, the trustees should deliver to him possession of the property, on which he should make certain repairs; and that he should pay the remainder of the purchase money, with accrued interest, on the first day of November, eighteen hundred and ninety-three; and providing further, that upon default of payment by the purchaser, he should immediately surrender the property to the trustees; and that without further order of the Court, they should proceed to resell. The purchaser having failed to pay the balance of the purchase money remaining due, the trustees sold the property by public auction on the eighteenth day of December, eighteen hundred and ninety-three, to Isaac S. Filbert. The advertised terms of sale were as follows: " One-third cash, balance in two equal installments at 6 and 12 months from the day of sale, the credit payments to bear interest from the day of sale and to be secured to the satisfaction of the trustees, or all cash at the option of the purchaser. A deposit of $500.00 will be required at the time of sale." Exceptions to the ratification of the resale were filed by Thomson, the former purchaser. The exceptions were overruled, the sale was ratified, and appeal was taken by Thomson.

There were a number of exceptions to the sale, but the important points of objection were three: first, gross inadequacy of price; second, that the property was not sold to the highest bidder; third, that the trustees did not use their best endeavors to obtain the highest price which could be obtained. The resale was regularly advertised, and it was made at the time and place mentioned in the advertisement. A very unusual incident which occurred at the sale has furnished the principal ground of controversy in this case. As the auctioneer entered the salesroom, Mr. Renner, who has the charge of it, handed him a letter; upon opening it he found that it contained an order to buy the property signed by Thomas L. Lister, and also five hundred dollars, the deposit required by the advertised terms of sale. Mr. Renner did not know the name of the person who gave him the letter, and did not know its contents. It was proved in the testimony that the money was placed in the letter by G. Lloyd Rogers, and that he was the person who handed it to Renner. Rogers testified that he proposed to buy the property on his own account, and that he had made with the Bank of Commerce the arrangements which he considered necessary for the purpose. He had procured from the bank five hundred dollars. This was the money which was put in the letter signed by Lister. The auctioneer, before commencing the sale, consulted the trustees, and asked them what course he was to pursue in reference to the Lister letter; they each declined to take any responsibility in the matter, or to give him any instructions. The property was offered, and it ran up to twenty-eight thousand five hundred dollars, which sum was bid by Isaac S. Filbert. The auctioneer then consulted the trustees, who instructed him to sell the property at that price, if no further bid could be obtained. He then stated from the auction stand that he had a letter from a Mr. Lister, whom he did not know, asking him to buy the property for him, and to bid more money for it than had been so far offered; and he further said, that if Mr. Lister was present, or any

one was there to represent him, who was satisfactory to the trustees, he would accept the bid, inasmuch as the deposit of five hundred dollars was enclosed in his letter. Mr. Rogers at this point approached the trustees, and asked whether they would accept the bid in behalf of Lister; they told him that was a matter left to the auctioneer. Mr. Rogers then asked the trustees to postpone the sale, and said that, in desiring the postponement, he represented Thomson, the former purchaser. Rogers testified that he asked the auctioneer if he would accept his bid, and that the auctioneer replied, " If the trustees will not take your bid, I cannot." Another witness testifies the same thing. The auctioneer testifies that Rogers did not say that he wished to bid for himself, and that his own remark was in reference to the Lister bid, which Rogers desired to be accepted. This is the probable explanation of a seeming discrepancy in the evidence, and this is fully sustained by the testimony of the two trustees. Rogers does not say that he made any bid. His testimony on this point is as follows:

" I offered to make a bid, and before I offered to make it, Mr. Kirkland was crying the property, and crying $28,500, and I thought he was about to knock it down, and raised my hand, kind of motioned to him, and he cried out $29,000, and I thought that that was for my bid; he then called out to a Mr. ———, I have forgotten the name, and no one answered, and then he had a consultation with the trustees, and I went up to the front of the room, and then learned that he made this bid, or cried this $29.000 on the authority of a letter that he had." He was very much interested in procuring the Lister bid to be accepted. The auctioneer testified that if Rogers had made a bid on the property, he would have accepted it, and then it would have been for the trustees to say whether it was acceptable to them. But it appears that the five hundred dollars necessary for a deposit, which Rogers had provided, had been enclosed by him in the Lister letter, and was no longer in

his possession. As no one bid more than Filbert, the property was knocked down to him.

We have given a statement of the important facts as they appear to us to be established in proof. If Lister really wished to bid for the property, he ought not to have pursued such a singular and mysterious course. He might have had some authorized representative at the sale, or he might have made himself known to the trustees or to the auctioneer. But he appears to have given himself no concern about the matter; even the deposit of five hundred dollars contained in his letter to the auctioneer, was placed there by Rogers. He has not appeared since the sale to claim any rights, nor does it appear from anything in the record that he would have been a responsible bidder. The terms of sale required (besides the deposit) one-third of the purchase money in cash and the balance in two equal installments, at six and twelve months from the day of sale, the credit payments to bear interest and to be secured to the satisfaction of the trustees, or all cash, at the option of the purchaser. Lister certainly would have no right to become the purchaser, unless he was able to comply with these terms. Most assuredly the trustees could not be required to assume that an unknown man, and one who seemed determined to remain unknown, was either able or willing to make the cash payments and give the required security. And so far as we learn from the record, they have not yet any reason to believe it.

Lister being out of the question, Filbert was the highest bidder. There is no foundation for the charge that the trustees did not diligently and faithfully perform their whole duty. This question may be dismissed without further remark. The allegation of gross inadequacy of price is not sustained. The opinions of the witnesses about the value of the property are not as convincing as the actual offer of money by persons prepared to pay for it. The highest offer which the trustees could obtain, after much effort, was thirty thousand seven hundred and fifty dollars, and of this

sum, with the sanction of the Court, they paid to a broker seven hundred and fifty dollars for negotiating the sale. This price was satisfactory to the owners of the property on whose account the sale was decreed to be made. The trustees extended great indulgence to -the purchaser in affording him opportunities for payment; but, after nearly eleven months of strenuous endeavor, were unable to collect the money from the man who now alleges that a price about two thousand dollars less is grossly inadequate. There is no circumstance to impeach the regularity and fairness of this sale. The price is probably somewhat below the real value of the property, but we could not set the sale aside for this reason, without violating well-established precedents. This question has been so frequently before this Court that we deem it unnecessary to refer to the decided cases.

*Order affirmed.*

(Decided December 18th, 1894.)