FIDELITY INSURANCE & SAFE-DEPOSIT CO. v. ROANOKE ST. RY. CO.

MERCANTILE TRUST & DEPOSIT CO. v. ROANOKE ELECTRIC LIGHT & POWER CO.

(Circuit Court, W. D. Virginia. October 2, 1899.)

1. JUDICIAL SALE—GROUNDS FOR SETTING ASIDE.
 Mere inadequacy of price, unless so great as to shock the conscience, is not ground for setting aside a judicial sale.

2. CORPORATIONS—FORECLOSURE OF MORTGAGE AGAINST—AGREEMENT BETWEEN BONDHOLDERS.
 An agreement between bondholders of a corporation which has made default, for the protection of their common interests on a foreclosure, which contemplates a purchase of the mortgaged property, if deemed necessary or advisable, is not illegal, or contrary to public policy, where it contains no provision for preventing competition at the sale, or for obtaining any unfair advantage over others.

On Motion to Confirm Sales under Decrees of Foreclosure of Certain Property of Each of the Defendant Companies.

S. Hamilton Graves and Richard M. Venable, for purchaser.

Scott & Staples, for objecting creditor.

PAUL, District Judge. On the 1st day of May, 1899, a decree of sale was entered in each of these causes, and the same special commissioners were appointed in each to make sale of the property of the respective corporations. For convenience, the defendant corporations will be designated as the "Street-Railway Company" and the "Light & Power Company." On the 1st day of August, 1899, the commissioners sold the two properties at public auction, and Richard M. Venable became the purchaser. The sales were duly reported by the commissioners, and their confirmation recommended. On the 8th day of August, 1899, the court entered decrees nisi on said reports, and fixed the 18th day of August, 1899, for hearing objections to the confirmation of the sales. On that day R. R. Hicks, trustee in a deed of trust executed by M. M. Rogers, an unsecured creditor of the Roanoke Street-Railway Company, whose claim of $40,000 is disputed, filed a petition in each case objecting to the confirmation of the sales of the respective properties. Said Hicks, trustee, makes no claim for any debt due him from the Electric Light & Power Company, but states that the said Electric Light & Power Company is indebted to the Street-Railway Company in the sum of $85,950.56, and that, on account of that indebtedness from the Light & Power Company to the Street-Railway Company, he is entitled to share in the proceeds of the sale of the property of the Light & Power Company.

The first objection which the court will consider to the confirmation of these sales is that of the inadequacy of price realized for the respective properties. The master reported, before the decree of sale was entered, that the Street-Railway property was worth $150,-000. This is the amount bid on it, and at which it was knocked down to R. M. Venable, the purchaser. The master reported the Light & Power Company property to be worth between $50,000 and $60,000. On this property the bid was $31,000, and at this price said R. M. Venable became the purchaser.

The ground upon which a court of equity will set aside a sale made under its decree, on account of the inadequacy of price realized, is too well understood to require discussion. The doctrine is thus stated by the supreme court in Graffam v. Burgess, 117 U. S. 180, 6 Sup. Ct. 686, 29 L. Ed. 839: "A judicial sale of real estate will not be set aside for inadequacy of price, unless the inadequacy is so great as to shock the conscience, or unless there be additional circumstances against its fairness." The holding of the court in Mining Co. v. Mason, 145 U. S. 349, 12 Sup. Ct. 887, 36 L. Ed. 732, is to the same effect. In 2 Beach, Mod. Eq. Prac. § 821, the grounds for setting aside a judicial sale are stated as follows: "To justify the interference of the court, there must be fraud, mistake, or some accident by which the rights of the parties have been affected. * * * It has never yet been decided that mere inadequacy of price was a sufficient reason, of itself, to open a sale." Id. § 824. There is no allegation of fraud, mistake, or accident in the conduct

of the sale. The only unfairness alleged is that the attitude of the purchaser to the properties offered for sale prevented competition. This will be considered hereafter in this decision. There is no evidence before the court that the properties were not sold for their fair value. There is no offer of an advanced bid nor a better price guarantied on a resale. The court has no assurance that on a resale the properties would bring more, or even as much, as the prices realized at the sales reported. The bonded indebtedness of the Street-Railway Company is $350,000. The indebtedness secured by trust deed on the property of the Light & Power Company is $218,-650.56. A mere statement of these figures shows the futility that must attend the efforts of the court to make these properties realize amounts anywhere proximate to the indebtedness of the corporations. They also show how remote is the interest of the petitioner in what can be realized from these sales. No order for a resale, with this purpose in view, will be made.

Said Hicks, trustee, as a further objection to the confirmation of these sales, charges that in the purchase of these properties R. M. Venable was not acting for himself, but as the agent of a committee, consisting of himself, Charles R. Spence, and S. Hamilton Graves, and that the said committee was not acting for themselves, but represented the stockholders and certain creditors of the Roanoke Street-Railway Company and the Roanoke Electric Light & Power Company; that this committee was created under an agreement made the 10th of January, 1898, by the bondholders of the Roanoke Railway Company, certain creditors of the Roanoke Electric Light & Power Company, and the stockholders of both companies. This statement is not sustained by the terms of the agreement to which it refers. The agreement is that of the holders of the first mortgage bonds of the Roanoke Street-Railway Company among themselves. Its character and purpose are shown by the following extracts:

"Roanoke Street Railway. First Mortgage Bondholders' Agreement.

"Baltimore, January 10th, 1898.

"We, the undersigned, hereby agree to deposit with the Mercantile Trust & Deposit Company of Baltimore the number of first mortgage bonds of the Roanoke Street-Railway Company set opposite our respective names, which are to be held subject to the order of Richard M. Venable, Charles R. Spence, and S. Hamilton Graves, a committee of the bondholders appointed at a meeting held in Roanoke, Va., on the 22d day of December, 1897. * * * The said committee, or a majority of them, are authorized to represent the owners of said bonds in all proceedings instituted for the collection of the same, or the enforcement of the rights of the owners thereof, and to do whatever acts in their judgment may be necessary or desirable for the protection of the interests of said bondholders. * * * It is further agreed that, if it shall be necessary to purchase the said railway, or the property of the Roanoke Electric Light & Power Company, or other property, for the benefit of the holders of the bonds deposited subject to the order of said committee, the said committee may organize a corporation to own and operate said railway, and such other property as may be purchased by said committee, upon such basis of bonds and stock as, in their opinion, shall be for the best interests of said bondholders."

This contract is the ground of the second objection to the confirmation of the sale, which is thus specifically stated: "That the property was purchased in pursuance of an agreement between the

stockholders and certain creditors of these companies, which is illegal, against public policy, to the prejudice of other creditors, and void." It is insisted that the agreement among the bondholders falls under the condemnation announced by the supreme court in Louisville Trust Co. v. Louisville, N. A. & C. R. Co., 174 U. S. 674, 19 Sup. Ct. 827, 43 L. Ed. 1130. The court in that case says: "Foreclosure of a railroad mortgage by collusion between bondholders and stockholders, for the purpose of destroying the interests of unsecured creditors, may be set aside on their application, as a fraud." It is sufficient to refer to the contract of January 10, 1898, to show the absence of collusion between the stockholders and bondholders of the railway company, or between the bondholders of the railway company and the stockholders of the Light & Power Company. It is by no means an unusual contract among mortgage bondholders for the preservation of their interests. It does not recognize and undertake to preserve the interests of the stockholders, and therefore does not bind the parties thereto to protect the interests of other crediors of the corporation.

But it is further contended on behalf of the petitioner that the purchase of the properties sold in these causes is null and void, by reason of a proposed contract dated October 11, 1897, which is referred to in the agreement among the first mortgage bondholders of the Street-Railway Company, of January 10, 1898. The parties to this proposed agreement are given as follows:

"Now, therefore, this agreement, made and entered into this 11th day of October, 1897, between the undersigned stockholders of the Roanoke Street-Railway Company, the stockholders of the Roanoke Electric Light & Power Company, the bondholders of the Roanoke Street-Railway Company, and the Mercantile Trust & Deposit Company of Baltimore, Maryland, and by the Roanoke Street-Railway Company and Roanoke Electric Light & Power Company, provided that all of the stockholders in said companies and all of the bondholders of the Street-Railway Company execute this agreement."

The object of this proposed agreement was to acquire the properties of the Street-Railway Company and of the Light & Power Company, and to form a new organization, to be known as the "Roanoke Railway & Power Company." This proposed agreement, had it been carried into effect, provided for the payment of the floating indebtedness of the Street-Railway Company and of the Light & Power Company, and could not, therefore, have been assailed as null and void because of its failure to provide for the satisfaction of the claims of general creditors. But, as this agreement was never executed, it is not necessary to discuss its provisions. That the proposed agreement of October 11, 1897, was not concluded, is shown by the affidavit of Mr. Venable. That the agreement of January 10, 1898, was a contract among the bondholders alone of the Street-Railway Company is shown, not only by the terms of the agreement itself, but by the affidavit of Mr. Venable, referred to above, which, it is agreed by counsel, may be read in evidence. Following is the affidavit:

"State of Maryland, City of Baltimore, to wit: I hereby certify that on this 21st day of August, 1899, before the subscriber, a justice of the peace of the state of Maryland, in and for Baltimore city, personally appeared Richard

M. Venable, and made oath, in due form of law: (1) That the original proposed agreement of 1897, between the bondholders and stockholders of the Roanoke Street Railway, the stockholders of the Roanoke Electric Light & Power Company, the Mercantile Trust & Deposit Company of Baltimore, and others, was never executed or accepted by the said Mercantile Trust & Deposit Company of Baltimore, and was abandoned, and no stock or bonds were ever deposited with the Mercantile Trust & Deposit Company of Baltimore, under said agreement. (2) That he has examined all of the copies of the agreement of January 10, 1898, which have been signed, and are now in possession of the Mercantile Trust & Deposit Company of Baltimore; that said copies are signed by bondholders, who state in most cases the number of bonds deposited, and in all cases the aggregate amount of such bonds deposited; and that no one has signed any of said agreements as a stockholder of the Roanoke Street Railway, or of the Roanoke Electric Light & Power Company, and that no stock of either of said companies has been deposited with the Mercantile Trust & Deposit Company of Baltimore under said agreements or either of them.

"John L. Webb, J. P."

The bondholders' agreement of the 10th of January, 1898, is such as has received the sanction of the courts in many decisions, and is sustained by leading text writers. In 1 Thomp. Corp. § 271, it is said:

"Where a default has occurred in the interest secured by a railway mortgage, the creditors of the corporation may, without the imputation of fraud, combine for the purpose of protecting themselves, by purchasing the property when legally brought to sale to foreclose the mortgage, provided it is no part of the agreement to prevent competition at the sale, or to acquire any unfair advantage over others."

There is no such purpose apparent in the agreement of the bondholders in this case. As was said by Justice Strong, delivering the opinion in Sage v. Railroad Co., 99 U. S. 334, 25 L. Ed. 394:

"There is almost a certainty that in foreclosure sales of a railroad, especially when the mortgage debts exceed the market value of the property, as in this case, the purchaser will be an association of some of the bondholders secured by the mortgage, who buy with the intention of organizing a new company to hold the property for their interests."

This is the plan adopted by the bondholders of the Roanoke Street Railway Company. It is a proper and legitimate course to pursue for the protection of their interests. There is nothing in it violative of the rights of any class of creditors, or that is condemned by public policy. The grounds of objections to the confirmation of these sales are untenable. The objections will be overruled, and the sales confirmed.