BLANKS et al. v. FARMERS' LOAN & TRUST CO. et al.

(Circuit Court of Appeals, Fifth Circuit. April 7, 1903.)

No. 1,197.

1. JUDICIAL SALE—GROUNDS FOR SETTING ASIDE—INADEQUACY OF PRICE.

Under the settled rule that a judicial sale will not be set aside for inadequacy of price, unless so gross as to shock the conscience, or unless there are additional circumstances which make it inequitable to allow it to stand, opinions by affiants that a larger price might be obtained on a resale are not sufficient to authorize the setting aside of a sale where no other facts are shown which make it inequitable.

2. SAME—ALLOWING FURTHER BIDS—ESTOPPEL.

Appellants, who were mortgage bondholders, opposed the confirmation of a sale of the mortgaged property under a decree of foreclosure to other bondholders on the ground of inadequacy of price, and on the hearing of the objections the court permitted further bidding conditioned on the offer of a better bid by appellants. They made such bid, and participated in the subsequent bidding, the final bid being made by the original purchasers, and being over 20 per cent. above that reported by the commissioner. Thereupon the court entered an order confirming the sale at the enhanced price. *Held*, that appellants were estopped to raise the objection that the court did not cause the property to be readvertised, and again submitted to sale at public auction.

Appeal from the Circuit Court of the United States for the Western District of Louisiana.

This controversy grows out of the cause entitled "The Farmers' Loan & Trust Company, Trustee, Complainant, vs. The Vicksburg, Shreveport & Pacific Railroad Company et al., Defendants," No. 216 of the docket of the United States Circuit Court for the Western District of Louisiana, the style being the result of an order of consolidation of the several causes numbered 215, 216, and 217 of the docket, in equity. The common object of these causes was the foreclosure of certain mortgages upon the property of the Vicksburg, Shreveport & Pacific Railroad Company, securing two several bond issues, and incidentally for the appointment of a receiver. The attitude of the appellants here was originally that of interveners, but under the order of consolidation they were made to stand as defendants. On October 7, 1901, there was a decree of foreclosure as to the granted lands of the defendant company, and, the cause having been retained for that purpose, there was a further amendatory order on December 7, 1901. Pursuant to this decree, there was a sale, on February 1, 1902, of the granted lands, comprising selections certified and uncertified, reserved mineral rights, funds unappropriated arising from sales of lands, notes for the purchase price of certain other sales, and other notes for rents, etc. At this sale, Cyril C. Harvey, "for account of himself and associates," became the purchaser of all the property, for the aggregate sum of $115,900. On February 28 and on March 4, 1902, respectively, Robert B. Blanks, and Mrs. Fannie K. Newman, surviving partner in community and testamentary executrix of Charles Newman, deceased, filed exceptions to the master's report, opposing the confirmation of the sale, and charging various irregularities in the conduct of the same, as well as that the price at which the property was sold was grossly inadequate. Upon the issues created by the answer of the defendant company, and "C. C. Harvey, representing bondholders, purchaser," the matter was heard at chambers in the city of New Orleans, by consent of counsel, on April 17, 1902, when the following decretal order was passed: "This cause came on this day to be heard at chambers, in the city of New Orleans, by consent of counsel, in the matter of the opposition of Robert B. Blanks, and Mrs. Fannie K. Newman, surviving partner in community and

¶ 1. See Judicial Sales, vol. 31, Cent. Dig. § 77.

testamentary executrix of Charles Newman, deceased, to the confirmation of the sale of the land grant lands of the defendant railroad company and other property herein sold February 1, 1902, pursuant to decree of this court, and was argued by counsel. Whereupon, and upon consideration whereof, it was ordered that the hearing herein be postponed until Friday, May 2, 1902, at 11 o'clock a. m., at chambers in the city of New Orleans, at which time if the said opponents, or either of them, shall make, or cause to be made, a bid larger by ten thousand dollars ($10,000.00) than the bid heretofore made by C. C. Harvey, representing certain bondholders, the court will open the bidding, and allow further bids to be made before the judge signing this order, and at chambers; otherwise will refuse to open the bidding, and will confirm the sale heretofore made."

On May 14, 1902, was passed the following decree confirming the sale: "The above cause came on to be heard on Thursday, April 17th, at chambers in the city of New Orleans, by consent of all counsel of record in the matter of the exception of Robert B. Blanks, and of the opposition of Mrs. Fannie K. Newman, surviving partner in community and testamentary executrix of Charles Newman, deceased, to the confirmation of the sale of the land grant lands of the defendant railroad company, and other property, herein sold on the 1st day of February, 1902, pursuant to a decree of this court. There were present Messrs. E. T. Lamkin and W. F. Millsaps, solicitors for exceptor and opponent; Mr. E. B. Kruttschnitt, solicitor for the Central Trust Company; Mr. Harry H. Hall, solicitor for C. C. Harvey, purchaser for account of certain holders of the mortgage bonds resting upon said lands; and said cause was argued by said counsel. Whereupon, and upon consideration whereof, it was ordered that the hearing therein be postponed until Friday, May 2, 1902, at 11 a. m., at chambers, in the city of New Orleans, at which time, if the said exceptor and opponent, or either of them, should make, or cause to be made, a bid larger by ten thousand dollars than the bid heretofore made by Cyril C. Harvey, representing certain bondholders (which bid for the aggregate of all the property sold on February 1, 1902, under said original decree of sale, was $115,900.00), the court would open the bidding, and allow further bids to be made before the judge sitting at chambers, and otherwise would refuse to open the bidding, and would confirm the sale heretofore made on February 1, 1902. And thereupon, on Friday, May 2, 1902, the said hearing was postponed without action, upon the application of Mr. E. T. Lamkin, solicitor for exceptor and complainant, he being unable to appear in the city of New Orleans on that day, until Tuesday, May 13th, at 11 a. m., when the court met at chambers, in the city of New Orleans, in pursuance of the agreement and consent of all counsel and the order of the court; and thereupon Mr. E. T. Lamkin, solicitor for Robert B. Blanks and the Mississippi Valley Realty Company, tendered to the court and deposited with Mr. Wm. Grant, special master, a certified check for $10,000.00, and the said adjudication of February 1, 1902, was thereupon declared and considered to be open for further bids. And thereupon said Mr. E. T. Lamkin, solicitor for said Robert B. Blanks, exceptor, and said Mississippi Valley Realty Company, made a written bid for $125,900.00, accompanying the said bid with the above referred to certified check for ten thousand dollars, payable to Wm. Grant, special master, the balance of the bid to be paid within the time and manner stipulated in the original advertisement and decree. And thereupon Mr. Cyril C. Harvey, representing certain bondholders, the adjudicatee under the sale of February 1, 1902, bid the sum of $126,000.00; and thereupon Mr. E. T. Lamkin, solicitor, having stated that he labored under a misapprehension of fact as to whether further bids would be then entertained, applied to the court for a further extension of twenty-four hours within which to renew the bidding for the said property; and the court thereupon adjourned the further hearing and bidding until Wednesday morning, May 14th, at 12 m.; all of the said parties in interest appeared by their solicitors above named, and the bidding was renewed, said Mr. E. T. Lamkin, solicitor for the parties above named, bidding in opposition to Mr. Harry H. Hall, solicitor for C. C. Harvey, representing the said bondholders, until, after a series of twenty-four bids, said Mr. Harry H. Hall, solicitor, made a final bid for C. C. Harvey, representing the said bondholders, of one hundred and forty

thousand dollars ($140,000.00), which was the last and best bid made for the said property. Now, on the 14th day of May, 1902, the court having fully considered the exception and objection and the argument of counsel thereon, and it appearing to the court that the said sale was duly and regularly made by said special master in accordance with the law and the practice of this court, and in the manner provided in said decree, and it further appearing to the court that all objections and exceptions to said sale on the ground of insufficiency of price or otherwise have been waived by permitting opponent and exceptor as well as others to make further bids, the court being duly advised in the premises, it is therefore ordered, adjudged, and decreed by the court that the said exceptions and objections and all of them, except in so far as they may have been maintained by permitting the parties to make new bids, be, and the same are hereby, overruled; and it is further ordered, adjudged, and decreed that the said report of the said special master and the said sale by him, made as set forth in his said report, be, and the same is hereby, approved and otherwise confirmed, the price, however, to be paid to be increased, as by the subsequent bids, made without objection, from $115,900.00 to the sum of $140,000.00, to be paid as provided in the original decree herein; and it is further ordered, adjudged, and decreed that proper and legal conveyances of all the property so sold are hereby directed to be executed to the said purchasers or assigns in the manner and by the parties provided for by the decree of this court made and entered herein on the 7th day of October, 1901."

E. T. Lamkin and W. F. Millsaps, for appellants.

E. B. Kruttschnitt, E. H. Farrar, B. F. Jonas, and Harry H. Hall, for appellees.

Before PARDEE and SHELBY, Circuit Judges, and PARLANGE, District Judge.

PARLANGE, District Judge (after stating the facts as above). The appellants and the appellees are all mortgage creditors. Counsel for the appellants stated in argument that his clients should not be considered as parties desirous of buying the property, as their only interest is that the property should realize the greatest sum possible towards the satisfaction of the obligations secured on the property. Counsel for the appellants also stated in argument that inadequacy of price is the only ground of exception to the master's report concerning the sale, now relied on.

The complaints of the appellants are substantially: (1) That the court did not, because of inadequacy of price, vacate the sale without condition; and (2) that the court did not order that the property be reoffered for sale by public auction, and did not also order a second publication and advertisement of the sale for another term of 30 days.

It is perfectly well settled that a judicial sale will not be set aside for inadequacy of price unless it be so gross as to shock the conscience, or unless there be additional circumstances which would make it inequitable to allow the sale to stand. Graffam et al. v. Burgess, 117 U. S. 180, 6 Sup. Ct. 686, 29 L. Ed. 839; Pewabic Mining Co. v. Mason, 145 U. S. 349, 12 Sup. Ct. 887, 36 L. Ed. 732; C. C. A., Sixth Circuit, in Magann v. Segal et al., 34 C. C. A. 323, 92 Fed. 252; Fidelity Insurance, etc., Co. v. Roanoke Iron Co. (C. C.) 84 Fed. 752; Fidelity Insurance, etc., Co. v. Roanoke St. Ry. Co. (C. C.) 98 Fed. 475; Beach, Mod. Eq. Pract. § 824; Am. & Eng.

Enc. of Law (2d Ed.) Vol. 17, p. 1000, Verbis "Judicial Sales," and numerous cases there collated.

In the first place, it has not been made reasonably certain that the price was inadequate under the circumstances. 'The affidavits, both pro and con, are but expressions of opinion as to what the property would bring on a resale. Opinions that a larger price would be brought are not sufficient to set aside a sale. Fidelity Trust, etc., Co. v. Mobile St. Ry. Co. (C. C.) 54 Fed. 26. If it were true that a judicial sale must be set aside whenever one or more affiants, however honest, state that it is their belief that the property would bring a larger price on a resale, many, and perhaps most, judicial sales would have to be set aside.

But, even if it were conceded that the price was inadequate, it is evident that the inadequacy would not be such as to shock the conscience, within. the meaning of the numerous adjudications above referred to; and, as it is not claimed that there is any additional circumstance which would make it inequitable to maintain the sale— in fact, no such circumstance appears in any manner—the complaint as to the inadequacy of price is clearly unfounded.

We find the appellants' second contention to be also baseless. As the result of the appellants' initiative, the appellees have been made to pay $24,100 more than they would otherwise have paid. Yet they do not complain. Nor is there any complaint from the other mortgage creditors, whose interest is very much larger than that of the appellants. The only complaint comes from the appellants. Can they be heard? Have they not fully acquiesced in the action they complain of, and are they not estopped by their acts?

On their initiative, the judge of the lower court passed a decretal order on April 17, 1902, to the effect that if they should at .chambers, on a day fixed, make a bid larger than the former bid by $10,000, the court would open the bidding, and allow further bids to be made before the judge at chambers. Whether or not this order clearly stated that the bidding was to proceed immediately before the judge, it is evident that on a subsequent date the appellants' counsel were fully informed that the judge intended to proceed with the bidding at chambers, and at their request they were given time to prepare for the bidding; and, finally, having deposited $10,000 with the master as a prerequisite, they actively took part in the bidding, when, after a considerable number of bids had been made, the property was adjudicated to the same parties who had made the highest bid at the first offering. As has already been said, the result of the appellants' action in this matter has been to compel the purchasers to pay $24,100 more for the property than they would otherwise have paid. The appellants, as mortgage creditors, are, of course, benefited by such increase in the price. If, as stated in argument by appellants' counsel, they were given different relief from that which they had asked, they should have stood on the refusal of the relief to which they believed themselves entitled and applied to this court for redress. In this matter the statute concerning the advertisement and sale of property (Act March 3, 1893, 27 Stat. 751 [U. S. Comp. St. 1901, p. 710]) was fully complied with. Every one has had a full

opportunity to bid on the property, and the question is not whether the judge could originally have sold the property at chambers and without advertisement, but whether, after the property has been duly advertised and offered for sale, the action of the judge, resulting in the purchaser's increasing the price very largely, should be upset at the instance of the appellants, who were the prime movers in the matter, and participants in the latter bidding. It is clear that if the appellants had succeeded in buying the property they would not be here complaining. Can they be heard to complain because others bought it? We are clearly of opinion that, under the circumstances of this matter, the action of the lower judge should be allowed to stand. That action has resulted beneficially to all parties in interest, including the appellants. The final price obtained exceeds largely the upset price fixed by the court.

It was stated at the hearing by the appellants' counsel that the check for $10,000 has been returned to the appellants. By taking back the check, they of course acquiesced further in the action of the judge. If we were to annul the sale, it would seem that there would be no assurance that on a resale the property would even bring as much as it did before.

The decree appealed from is affirmed.