### MORRISON et al. v. BURNETTE et al.

#### (Circuit Court of Appeals, Eighth Circuit.  July 10, 1907.)

#### No. 2,529.

1. **APPEAL AND ERROR—ASSIGNMENT REQUISITE FOR ERRORS NOT JURISDICTIONAL—CROSS-ERRORS NOT ASSIGNABLE.**

    An appellate court will notice without objection or assignment the lack of jurisdiction of an inferior court.

    But alleged errors in the exercise of its jurisdiction can be presented only by appeal or writ of error and a proper assignment of errors. Cross-errors are not judicable in a federal appellate court.

    [Ed. Note.—For cases in point, see Cent. Dig. vol. 2, Appeal and Error, § 1166; vol. 3, Appeal and Error, §§ 2968, 2971.]

2. **APPEAL—RECORD—BILL OF EXCEPTIONS—UNNECESSARY IN EQUITY.**

    A bill of exceptions has no function and is unnecessary in an equity proceeding in the absence of a trial of some issue by a jury, because the appeal brings the entire record, including the evidence, objections, and exceptions, to the appellate court.

    [Ed. Note.—For cases in point, see Cent. Dig. vol. 3, Appeal and Error, § 2437.]

3. **COURTS—APPEALS TO COURT OF APPEALS OF INDIAN TERRITORY TAKEN AS TO COURT OF APPEALS OF EIGHTH CIRCUIT.**

    Appeals to the Court of Appeals of the Indian Territory from orders, judgments, and decrees of the trial courts made in the exercise of their probate jurisdiction must be taken, and the practice therein is governed,

by the method of taking and the practice in appeals from the Circuit Courts to the Circuit Court of Appeals of the Eighth Circuit (Act March 3, 1905, c. 1479, § 12, 33 Stat. 1081 [U. S. Comp. St. Supp. 1905, p. 150]), and not by sections 1385, 1386, Mansf. Dig. Ark.

**4. INDIANS—MINORS' ALLOTMENTS—SECRETARY OF INTERIOR HAS NO JURISDICTION OF LEASES OF.**

Leases of allotments of Indian minors in the Indian Territory, confirmed and approved by the trial courts of that territory since April 26, 1906, are not subject to the approval or disapproval of the Secretary of the Interior, but the orders of the courts confirming and approving them are final.

**5. APPEAL AND ERROR—FINAL DECISION—ORDER AVOIDING CONFIRMATION OF SALE OF LEASE IS.**

A decision which completely determines the rights of parties in the pending proceeding, who are not jointly liable with others, is a final decision, reviewable by appeal or writ of error under the acts of Congress.

An order which avoids a confirmation of a sale and an approval of a lease of an allotment of an Indian minor is a final decision, because it completely determines the right of the purchaser thereunder.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 2, Appeal and Error, § 381.]

**6. JUDICIAL SALES—AVOIDANCE—EFFECT OF RULE THAT COURTS HAVE POWER OVER ORDERS AND DECREES DURING TERM.**

The general rule that the courts have power over their judgments, decrees, and orders during the term at which they are rendered does not give them jurisdiction to avoid confirmed judicial sales without cause at the term at which they are confirmed, because the rights of purchasers vest thereunder upon confirmation.

The only effect of this rule on such sales is to enable the courts to consider alleged causes for avoiding them during the term on motions or orders to show cause upon due notice, without the filing of formal bills for that purpose.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 31, Judicial Sales, §§ 72, 80.]

**7. SAME—BEFORE CONFIRMATION OPENING FOR FURTHER BIDS ALLOWABLE FOR GREAT INADEQUACY OF PRICE AND SLIGHT UNFAIRNESS.**

A successful bidder under an order or decree of court at a sale which is subject to confirmation by the court is a purchaser from the announcement of the sale to him by the officer, and may thereafter be compelled to complete his purchase.

Before confirmation a sale will not be set aside for mere inadequacy of price, unless it is very great; yet, if the inadequacy be great, slight circumstances of unfairness in the conduct of the party benefited will be sufficient to open it for farther bids.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 31, Judicial Sales, § 55.]

**8. SAME—VOIDABLE AFTER CONFIRMATION FOR FRAUD OR MISTAKE ONLY—IT MAY NOT BE OPENED FOR BETTER BIDS.**

After confirmation of a judicial sale the rights of the purchaser have vested. Neither inadequacy of price, nor offers of higher prices, nor anything but fraud, mistake, accident, or some other cause for which equity would avoid a like sale between private parties, will warrant a court in avoiding the sale or in opening it for other bids.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 31, Judicial Sales, §§ 66, 77.]

(Syllabus by the Court.)

Appeal from the United States Court of Appeals in the Indian Territory.

Pursuant to an order of the United States Court in the Western District of Indian Territory, which has the jurisdiction of a probate court, a lease of 160 acres of mineral land which had been allotted to Edith Durant, a minor Indian, was advertised for sale on sealed bids by Monday Durant, her guardian, and on the day of sale, March 5, 1906, the highest bonus bid for it was $3,490, and this bid was made by Robert W. Morrison, Charles W. S. Cobb, John E. McKinney, William J. Breene, and Frank M. Breene, who are now the appellants in this case, and will hereafter be so styled. The Laurel Oil & Gas Company, a corporation, one of the appellees, bid at the same time at this sale $2,850 for this lease. On March 7, 1906, the appellants deposited the $3,490 with the court, and on March 9, 1906, the guardian executed the lease of the land to the appellants, and they applied to the court for the confirmation of the sale and the approval of the lease. After notice to all parties in interest, and a hearing, the court on June 11, 1906, "ordered, adjudged, and decreed that the lease executed by Monday Durant, guardian of Edith Durant, minor, on the 9th day of March, 1906, [to the appellants] be, and the same is hereby, in all things approved, ratified, and confirmed." On the next day the Laurel Company, the unsuccessful bidder at the former sale, made a motion for leave to bid again for the lease of this land, and offered to bid a bonus of $8,000. Thereupon the court set aside the order of June 11, 1906, for the sole reason that a higher bonus could be obtained, and on June 14, 1906, it sold a lease of 80 acres of this land on the same terms as the former to the Galbraith Oil & Gas Company for a bonus of $16.800 and a lease of the other 80 acres on the same terms to the Laurel Oil & Gas Company for $2.000. The leases to these parties were subsequently made by the guardian, and the court confirmed these sales and approved these leases. The appellants then sued out a writ of error from the Court of Appeals of the Indian Territory to reverse the order which set aside the decree of confirmation of the sale and of approval of the lease to them, and they also appealed from that order. The Court of Appeals of the Indian Territory consolidated the two cases, heard them as an appeal in equity, and affirmed the order below, because the court was evenly divided in opinion. The appellants have brought the latter judgment here by writ of error, and also by appeal.

Since the case came to this court the controversy over the 80 acres leased to the Galbraith Oil & Gas Company has been settled, and the only dispute remaining relates to the 80 acres leased to the Laurel Oil & Gas Company under the second lease.

W. J. Breene and J. J. Shea (W. B. Homer and Edmond C. Breene, on the brief), for appellants.

George A. Murphey (William T. Hutchings and William P. Z. German, on the brief), for appellees.

Before SANBORN and HOOK, Circuit Judges, and PHILIPS, District Judge.

SANBORN, Circuit Judge, after stating the case as above, delivered the opinion of the court.

As this is a proceeding in equity, the writ of error must be dismissed, and the case must be considered and decided upon the appeal, and it is so ordered.

The real question in the case is: May a court of equity, during the term at which the confirmation is made, lawfully avoid an executed judicial sale which it has confirmed, on the sole ground that a larger price may be obtained by a second sale?

Before entering upon the consideration of this question some preliminary objections must be considered. Counsel for the appellees insist that this issue is not within the jurisdiction of this court (1) because the writ of error issued by the Court of Appeals of the In-

· dian Territory to the trial court was not allowed by any judge of the former court or by the trial judge; (2) because the petition for ·the writ of error and the assignment of errors thereon show no filing marks; and (3) because the assignment of the errors of the trial court was not filed until 36 days after the appeal was taken. And they cite U. S. v. Goodrich, 54 Fed. 21, 4 C. C. A. 160, and Flahrity v. Union Pac. Ry. Co., 56 Fed. 908, 6 C. C. A. 167. But these objections do not assail the jurisdiction of the Court of Appeals of the Indian Territory, for this is a proceeding in equity reviewable by appeal, an appeal was taken, and that court had ample power to hear and decide the merits of the cases upon that appeal, either upon an assignment of errors filed out of time or without any assignment whatever. A hearing on an assignment filed too late may have been error, but it was not jurisdictional error. It related merely to the method of the exercise by the appellate court of its undoubted power, and not to its total want of jurisdiction, and hence it is reviewable in this court only upon an appeal and a proper assignment of errors. Rogers v. Penobscot Mining Co., 154 Fed. 606, decided at this term. The appellees have taken no appeal, and they cannot invoke the jurisdiction of a federal appellate court to consider or decide questions of this nature by an assignment or by an argument of cross-errors. Guarantee Co. v. Phenix Ins. Co., 59 C. C. A. 376, 379, 124 Fed. 170, 173.

Another objection is that the record contains no bill of exceptions. But no bill of exceptions is requisite in a proceeding in equity, because the appeal brings the entire record to the appellate court. Dodge v. Norlin, 66 C. C. A. 425, 431, 133 Fed. 363, 369; Teller v. U. S., 49 C. C. A. 263, 111 Fed. 119.

Counsel argue that the appeal in this case was not taken in accordance with the method prescribed by Mansfield's Digest of the Laws of Arkansas for appeals from probate courts to circuit courts (sections 1385, 1386) and that on such an appeal a bill of exceptions is essential. But Congress has provided that appeals from the United States Courts in the Indian Territory to the United States Court of Appeals in the Indian Territory should be taken in the same manner as is provided in cases taken by appeal from the Circuit Courts of the United States to the Circuit Court of Appeals of the United States for the Eighth Circuit. Act March 3, 1905, c. 1479, § 12, 33 Stat. 1081 ⌐U. S. Comp. St. Supp. 1905, p. 150]. This appeal was so taken. No bill of exceptions is required to bring the entire record before this court in a suit in equity on an appeal from a Circuit Court, and hence none was essential to do so in the Court of Appeals of the Indian Territory. Sections 1385 and 1386 of Mansfield's Digest are not in force in the Indian Territory, and the act of Congress must prevail.

Another contention is that the merits of this case are not reviewable here, because the sale and the lease to the appellants were subject to the approval of the Secretary of the Interior, and hence the order which avoided their confirmation was not a final order. The United States Courts in the Indian Territory have the powers of courts of probate. Act May 2, 1890, c. 182, § 31, 26 Stat. 94; Act April 28, 1904, c. 1824, § 2, 33 Stat. 573. The act of Congress which ·

approved and ratified the supplemental agreement between the commissioners of the Creek Nation of Indians and the United States, which was approved June 30, 1902, provided that leases by Creek citizens for mineral purposes might be made with the approval of the Secretary of the Interior, but not otherwise. Act June 30, 1902, c. 1323, § 17, 32 Stat. 504. By the act to provide for additional United States judges in the Indian Territory, approved July 28, 1904, Congress enacted that "full and complete jurisdiction is hereby conferred upon the district courts in said Territory (the Indian Territory) in the settlement of all estates of decedents, the guardianships of minors and incompetents, whether Indians, freedmen, or otherwise." 33 Stat. 573, c. 1824, § 2. By the act of March 3, 1905, making appropriations for the expenses of the Indian Department and for fulfilling treaty stipulations with the Indian tribes, the Secretary of the Interior and the Attorney General were empowered to investigate leases of allotted lands in the Indian Territory and to bring suits to cancel them for fraud. But the act expressly provides that "no lease made by any administrator, executor, guardian or curator which has been investigated by and has received the approval of the United States court having jurisdiction of the proceeding shall be subject to suit or proceeding by the Secretary of the Interior or Attorney General," and that "no lease made by any administrator, executor, guardian or curator shall be valid or enforceable without the approval of the court having jurisdiction of the proceeding." Act March 3, 1905, c. 1479, 33 Stat. 1060. On April 15, 1905, the Secretary of the Interior adopted regulation No. 15, which reads thus:

"In cases of transfers, leases, and sales to which minors are parties grantor, the transfer, lease or sale must be made by a guardian, and the lease, deed, or instrument of conveyance must be accompanied by certified copies of the orders of the proper court appointing the guardian and authorizing him to make such transfer, lease, or sale, and it must be fully understood that the department reserves the right to use any means at its disposal for the purpose of ascertaining whether the consideration given is the fair value of the land, and whether the proposed lease or sale is for the best interests of the Indian."

By the act to provide for the final disposition of the affairs of the five civilized tribes in the Indian Territory approved April 26, 1906 (Act April 26, 1906, c. 1876, 34 Stat. 137, 145, 148) commonly called the "Curtis Act," the Congress enacted:

"Sec. 20. That after the approval of this act all leases and rental contracts, except leases and rental contracts for not exceeding one year for agricultural purposes for lands other than homesteads, of full-blood allottees of the Choctaw, Chickasaw, Cherokee, Creek and Seminole tribes, shall be in writing and subject to approval by the Secretary of the Interior and shall be absolutely void and of no effect without such approval: Provided, that allotments of minors and incompetents may be rented or leased under order of the proper court: Provided further, that all leases entered into for a period of more than one year shall be recorded in conformity to the law applicable to recording instruments now in force in said Indian Territory."

"Sec. 29. That all acts and parts of acts inconsistent with the provisions of this act be, and the same are hereby, repealed."

The regulation of the Interior Department is effective so far as it is sustained by the acts of Congress, and is ineffectual so far as it is in conflict with them. In the light of the legislation to which reference

has now been made there are two conclusive answers to the argument that the order avoiding the sale and the lease to the appellants was not a final order. In the first place the acts of April 28, 1904, and April 26, 1906, conferred "full and complete jurisdiction" of the guardianship of minors, whether Indians, freedmen, or otherwise, and of the rental or lease of their allotments, upon the trial courts of the Indian Territory, and the later act repealed all acts and parts of acts inconsistent therewith. The provision of the act of June 30, 1902, that leases for mineral purposes might not be made without the approval of the Secretary of the Interior, is inconsistent with the grants of these later acts. There can be no full and complete jurisdiction of the guardianship of minor Indians and of the leasing of their allotments in a court whose judgments are reviewable and reversible by an officer of another department of the government. Leases of allotments of Indian minors approved by the trial courts of the Indian Territory after April 26, 1906, were therefore not subject to approval or disapproval by the Secretary of the Interior. Those courts had full and complete jurisdiction to sell the leases and to finally approve and confirm the sales and the leases. The lease to the appellants is in this category. It was approved and the sale of it was confirmed on June 11, 1906, and the order which approved it was therefore a final order.

In the second place, even if the lease to the appellants had been subject to the approval of the Secretary of the Interior, and if the order of the court confirming the sale and approving the lease had been a mere recommendation of the court to him, yet that order was an indispensable prerequisite to the existence of a valid lease of the minor's land. The Secretary had no power to make or approve such a lease without the approving order of the court. Therefore the order which avoided the sale and the lease to the appellants deprived them of all right, privilege, and opportunity to secure or enforce the lease which the guardian had made to them. A decision which completely determines the rights of parties in the pending proceeding, who are not jointly liable with others, is a final decision, reviewable by appeal or by writ of error under the acts of Congress. Standley v. Roberts, 8 C. C. A. 305, 308, 59 Fed. 836, 839, and cases there cited. The appellees cannot escape the main issue in this case, and we turn to its consideration.

Counsel for the appellees indulge in extended argument and the citation of many authorities in support of the position that a court has jurisdiction of its judgments, decrees, and orders, and may summarily modify, revoke, or avoid them, without cause, during the term at which they are made, and from this premise they argue that the avoidance of the sale and lease to the appellants was regular and right. There is an established general rule that a court has power over its judgments, orders, and decrees during the continuance of the term at which they are first made. But it is a rule of practice, rather than of right. It is a rule that during the term judgments, orders, and decrees may be modified and avoided summarily without the necessity of filing a formal bill and commencing a suit for that purpose. Moreover, the power of a court under this rule to modify or avoid without cause is limited to the modification or avoidance of judgments, orders, and decrees which de-

termine issues between parties litigant before it and under which no rights have vested. Ex parte Lange, 18 Wall. 163, 21 L. Ed. 872; Bassett v. U. S., 9 Wall. 38, 19 L. Ed. 548; Doss v. Tyack, 14 How. 297, 312, 313, 14 L. Ed. 428; Goddard v. Ordway, 101 U. S. 745, 751, 752, 25 L. Ed. 1040; Henderson v. Carbondale Coal & Coke Co., 140 U. S. 25, 40, 11 Sup. Ct. 691, 35 L. Ed. 332; Bronson v. Schulten, 104 U. S. 410, 415, 26 L. Ed. 997; Ætna Life Ins. Co. v. Board of County Com'rs, 79 Fed. 575, 25 C. C. A. 94; Underwood v. Sledge, 27 Ark. 295, 297; Bradley v. Slater, 78 N. W. 1069, 58 Neb. 554. It does not empower a court to reverse or avoid without cause a judicial sale during the term at which it has been confirmed, because in such a case the character of vendor has been added to that of judicial tribunal, and the rights of the purchaser have vested by virtue of the confirmation of the sale. Pewabic Mining Co. v. Mason, 145 U. S. 349, 367, 12 Sup. Ct. 887, 36 L. Ed. 732. When a court becomes a vendor of an executed sale, it is no less bound by the rules of law, of equity, and of morals than is a private seller, and it may avoid its sale on the same grounds, and on no others. Hence the only effect of the rule that a court has power over its orders and decrees during the term, in the case of an application to avoid a judicial sale during the term at which it is confirmed, is to relieve the applicant from the necessity of filing a bill in equity for the purpose, and to permit him to apply for the relief he seeks upon due notice to the purchaser by motion or order to show cause.

Upon what grounds, then, may such a sale be lawfully set aside? The old rule in the English chancery was that a bidder at a sale under an order or decree of a court, which was subject to the subsequent report to and confirmation by the judicial tribunal, was not a purchaser, but was one who merely made a tender or offer to purchase, and that he could not be compelled to complete his bargain until the confirmation of the sale. This rule, however, has never prevailed in this country, and it has been abolished by act of Parliament in England. Acts 1867 (30 & 31 Vict.) c. 48, § 7. On the other hand, the rule is without exception in the national courts, and it has been very generally adopted in the state courts, that the bidder at a sale by a master or receiver, under an order or decree which contemplates a subsequent report and confirmation of the sale, becomes a purchaser when the officer announces the sale to him. Thereafter he is liable for and may be compelled to pay the purchase price he bids. Thereafter he may be made to suffer the loss of the destruction or depreciation, and may be permitted to reap the profit of the appreciation, of the property. Nevertheless he buys subject to the confirmation or avoidance of the sale by the court, and as he is aware of this fact, and the court is selling the property of others, and is acting in the dual capacity of trustee for the owners and of a judicial tribunal, it is undoubtedly its duty until confirmation to exercise a wise judicial discretion to secure for the owners the largest price consistent with a just regard for the rights of the bidder. Hence, if a material advance in price is offered and secured by a deposit or by a bond before the sale is confirmed, the sale has sometimes been opened, further bids have been received, and a sale to the highest bidder has been confirmed.

In Blanks v. Farmers' Loan & Trust Co., 59 C. C. A. 59, 122 Fed. 849, we find that mortgaged lands were offered for sale by a master under a decree of the court, and a bid was made and reported of $115,- 900. Before the confirmation of the sale, however, an advance of $10,000 was offered and secured, whereupon the court opened the sale, received 24 other bids, and finally confirmed the sale to the highest bidder for $140,000. In North Carolina and some other states it is a settled rule of practice to open the sale and receive new bids upon a guaranty of an advance of 10 per cent. Attorney General v. Roanoke Navigation Co., 86 N. C. 408, 413. But the practice of opening sales upon the offer of a secured bid of 10 per cent. advance has never prevailed in the national courts. The rule there is that mere inadequacy of price, unless very great, is insufficient to warrant the opening of the sale, but that, if the inadequacy be great, slight circumstances of unfairness on the part of the party benefited will be sufficient to prevent its confirmation and to warrant the opening of the sale for farther bids. Ballentyne v. Smith, Trustee, 27 Sup. Ct. 527, 528, 205 U. S. 285, 51 L. Ed. 803; Files v. Brown, 59 C. C. A. 403, 407, 124 Fed. 133, 137.

But there is a marked and radical distinction between the situations, the rights of the parties, and the established practice before and after the confirmation of the sale. The purchaser bids with full notice that the sale to him is subject to confirmation by the court and that there is a power granted and a duty imposed upon the judicial tribunal when it comes to decide whether or not the sale shall be confirmed to so exercise its judicial power as to secure for the owners of the property the largest practicable returns. He is aware that his rights as a purchaser are subject to the rational exercise of this discretion. But after the sale is confirmed that discretion has been exercised. The power to sell and the power to determine the price at which the sale shall be made has been exhausted. From thenceforth the court and the successful bidder occupy the relation of vendor and purchaser in an executed sale, and nothing is sufficient to avoid it which would not set aside a sale of like character between private parties. Hence the rule is settled, and it seems to be universally approved, that after confirmation of a judicial sale neither inadequacy of price, nor offers of better prices, nor anything but fraud, accident, mistake, or some other cause for which equity would avoid a like sale between private parties, will warrant a court in avoiding the confirmation of the sale or in opening the latter and receiving subsequent bids. Files v. Brown, 59 C. C. A. 403, 407, 408, 124 Fed. 133, 137, 138; Berlin v. Melhorn, 75 Va. 639, 641; Pewabic Mining Co. v. Mason, 145 U. S. 349, 367, 12 Sup. Ct. 887, 36 L. Ed. 732; Thomson v. Ritchie, 30 Atl. 708, 710, 80 Md. 247; Ins. Co. v. Cottrell, 9 S. E. 132, 133, 85 Va. 857, 17 Am. St. Rep. 108; Fidelity Ins. & Safe-Deposit Co. v. Roanoke St. Ry. Co. (C. C.) 98 Fed. 475, 476; Trull v. Rice, 92 N. C. 572, 574; Pritchard v. Askew, 80 N. C. 86; Bank v. Jarvis, 28 W. Va. 805; In re Third National Bank (D. C.) 9 Biss. (U. S.) 535, 4 Fed. 775; Collier v. Whipple, 13 Wend. (N. Y.) 224, 226; Watson v. Birch, 2 Ves. Jr. 51, 54; Williamson v. Dale, 3 Johns. Ch. (N. Y.) 290, 291; Ware v. Watson, 7 De Gex, M. & G. 739, 741; Condon v.

Maynard, 18 Atl. 957, 958, 71 Md. 601; Smith v. Black, 115 U. S. 308, 317, 6 Sup. Ct. 50, 29 L. Ed. 398; Barling v. Peters, 25 N. E. 765, 768, 134 Ill. 606; Graffam v. Burgess, 117 U. S. 180, 191, 192, 6 Sup. Ct. 686, 29 L. Ed. 839; Evans v. Maury, 112 Pa. 300, 312, 3 Atl. 850.

This rule is so firmly established that it is no longer debatable, and the cogent and all-sufficient reason for it is that judicial sales would become farces, and rational men would shun them and refuse to bid, if after the confirmation unsuccessful bidders or dissatisfied litigants could avoid them and secure new sales by offers of higher prices, when they thought the purchase a fortunate one, and thus secure the profits in that event, and leave the buyer to suffer the losses if the property depreciated in value or the purchase was unwise. No doubt remains regarding the proper decision in this case. The sale to the appellants was made on notice. The appellee, the Laurel Oil & Gas Company, made an unsuccessful bid at that sale. The lease to the appellants was executed, and they paid the amount of their bid to the court or its representative, more than three months before the sale was confirmed. The sale was confirmed, after notice, over objections, and after a full hearing. There was no fraud, no mistake, no surprise, no accident, no equitable ground for setting it aside. There was not even evidence that the purchase price was inadequate at the time of the sale. There was nothing but the mere fact that an unsuccessful bidder in March, who failed to offer more until after the sale was confirmed in June, suddenly became anxious to pay more than $5,000 above the price it had offered in March. The natural inference is that this property, which is of a speculative nature, had appreciated in value between the day of the sale and the day when this offer was made. If so, the purchaser who made the highest bid before the confirmation and paid the representative of the court the amount of it, and not the lower bidder, who paid nothing, was, after the confirmation, entitled upon every equitable principle to the benefit of the appreciation.

The order of the United States Court for the Western District of the Indian Territory, which set aside and avoided the decree of that court confirming the sale and approving the lease to the appellants, and the decree of the Court of Appeals of the Indian Territory, which affirmed it, are hereby reversed, and this case is remanded to the trial court, with directions to affirm and enforce its order and decree which confirmed the sale and approved the lease to the appellants, and to take any farther proceedings necessary to that end.

HOOK, Circuit Judge, concurs in the result.