O’NIELL, C. J.
 

 The plaintiff has appealed from a judgment rejecting his demand and dismissing his suit to annul a sheriff’s sale, made in executory proceedings, and to have the property resold at public auction hy the sheriff. The property, which was worth $8,000, was adjudicated to the plaintiff, in the executory proceedings, Nicola Ragusa, for $1,000. His was the only bid recognized. The mortgage was for $5,500, which, with interest and costs, amounted to almost $7,000. The plaintiff in this suit, Constant Greco, was the mortgagor, defendant in the foreclosure proceedings. He had sold the property to a corporation, called the Paramount Company, which had assumed his obligation, secured by the mortgage; but he, of course, remained personally liable for the- debt. He filed this suit on the next day after the auction sale was made, before the transaction was completed by the signing of a deed. The plaintiff’s complaint is that the auction was conducted with too much haste, and that the deputy sheriff who conducted the sale failed to hear or observe a hid of $1,100 made by a responsible bidder, who was present, ready, and intending to bid at least $4,000 for the property.
 

 The evidence in the case convinces us that a responsible bystander, A. S. Nunez, did bid $1,100 for the property at the moment when the deputy sheriff cried “Sold” to the seizing creditor. Nunez attended the sale for the purpose of bidding as high as $4,000', which he deemed to be only half of the value of the property. He was a licensed real estate broker and auctioneer, and had inspected the property'with the intention of bidding for it, and valued it at $8,000. "While the deputy sheriff was announcing Ragusa’s bid of $1,-000, Nunez raised his hand and tried to attract the attention of the deputy sheriff, but he. was looking in the direction of Ragusa and did not know that Nunez was trying to bid. Nunez then bid $1,100, but at that in* stant the deputy sheriff cried “Sold,” meaning that the property was sold to Ragusa. There were nine sales made by the deputy sheriff that day, the one in contest being the last sale made, and in every instance except one the sale was made to the seizing creditor at a sacrifice and without a competitive bid. The deputy sheriff was, therefore, apparently discouraged and impressed with the thought that this sale would be made also to the seizing creditor, without competition and at a very low bid. We do not blame the deputy sheriff for his failure to observe or hear the bid of Mr. Nunez. We do not doubt that if the deputy sheriff had heard Mr. Nunez bid, or had observed his attempt to bid, the deputy sheriff would have continued the auction until the bidding ceased. It is very likely also that the deputy sheriff would have resold the property immediately if Nunez had complained after the sale was made to Ragusa. Nunez explains why he did not complain of the failure of the deputy sheriff to observe or hear his bid. He says that he, being also a licensed auctioneer, was, as a matter of professional courtesy, unwilling to find fault with the deputy sheriff for 'the manner of conducting the sale. But, according to the testimony of Mr. Nunez, the bidding would have gone to $4,000, at least, if the sheriff had recognized his bid. As it happened, the sale was made at a very inadequate price, and not to the highest bidder— not by any fault of the deputy sheriff, but by an error, which, if not corrected, would'
 
 *689
 
 cause serious and unjust loss to the debtor, Greco. He was out of the city at the time, and was not represented at the sale. The attorney who now represents him in this suit, and who had represented him in other matters, was present at the auction exchange when the sale was made, but had failed in his effort to communicate with Greco, and therefore had no authority to do anything to protect the interest of Greco.
 

 We deem it just that the sale should be set aside and the property resold at public auction by the sheriff. It is essential to a valid auction sale that it should be made to the highest bidder and for the highest price that the auctioneer can obtain, even where the property is sold without appraisement. Rev. Civ. Code, art. 2601; 23 C. J. 646, § 609, and 647, § 613. No loss or injustice to Ragusa can result from the selling of the property for the highest price obtainable. The adjudication to him for the inadequate and merely nominal price of $1,000 was the result of an accident or error, which should not stand. The costs to be incurred in re-advertising and reselling the property will be imposed, necessarily, upon Greco, or the owner of the property, and not upon Ragusa. We have concluded also, in the exercise of our discretion, that the costs of the present suit should be borne by Greco, because of his failure to attend the sale.
 

 The judgment appealed from is annulled, and it is now decreed that the auction sale complained of be, and it is hereby, annulled, and that the sheriff shall resell the property at public auction, after proper advertisement, according to law and the terms of the original fiat of the civil district court. The plaintiff, Constant Greco, is to pay all costs of this suit.
 

 ROGERS, J., dissents.