SHORTESS, Judge.
Mellon Financial Corporation #7 (Mellon) brought a rule to show cause why the sale of certain immovable property to Kevin Hebert (Hebert), which took place at a sheriffs sale held at the Terrebonne Parish District Courthouse, should not be annulled and set aside based on error and other equitable concerns. The trial court ruled in favor of Mellon, and Hebert perfected this timely appeal.
The facts of this case are fairly simple and straightforward. Mellon is the holder of a promissory note in the amount of $18,100.00 that was executed by Louise and Dwight Cook (the Cooks) on September 16, 1975. The note was secured by a mortgage upon immovable property located in Terrebonne Parish and owned by the Cooks, which had an estimated value at the time of the auction of approximately $18,-000.00. After executing the note, the Cooks regularly paid the monthly installments of $145.71 through February 1, 1989, before they stopped making their payments. Pursuant to a writ of seizure and sale the Sheriff of the Parish of Terre-bonne seized the property and thereafter proceeded to sell it, without appraisal, at the sheriffs sale that forms the subject of this suit.
The auction was apparently regular and uneventful except for the following mishap. George Larke (Larke), attorney for Mellon, opened the bidding at $1,000.00. Diane Breaux, the deputy in charge who was an experienced auctioneer, accepted the bid and called the bid once. At that time, Hebert made a bid of $2,000.00. The deputy called the bid three times and then stated that the property was sold. Larke, apparently believing he had the successful bid, stepped forward stating that the seizing creditor was Mellon Financial Corporation. At that point he was informed by Breaux that Hebert was the high bidder on the property. Larke requested that the deputies reopen the bidding because he did not hear Hebert’s bid. Both Breaux and Gwen Champagne, another deputy present at the auction, rejected Larke’s request, as they believed the auction had been conducted normally and fairly. The next day plaintiff filed its rule to show cause.
Ten people, who were present at the sale, testified at the hearing, including Larke and both of the deputies who conducted the sale. Four people, including both deputies, heard Hebert’s bid. All of the witnesses, except for Larke, heard the deputy announce the bid at two thousand dollars.
The testimony adduced at the hearing reveals other pertinent facts. First, Pam Robichaux, another bidder at the auction, testified that Larke after making his bid started to refer to his papers. This is corroborated by Larke’s testimony. He stated that he began putting a circle around the $1,000.00 figure that he had on his paperwork after he made his bid to indicate that he purchased the property for that amount. Second, the testimony of the witnesses reveals that Larke was to the right of the group of bidders that faced the deputies, with Hebert positioned somewhere in the middle of the group, and that Larke is deaf in his right ear. Clearly, Larke contributed to the problem by not positioning himself in a more favorable position, considering his hearing disability. Moreover, Larke may not have been paying close attention to what was going on around him at the auction.
When the highest price offered has been cried long enough to make it probable that no higher price will be offered, he who has made the offer is publicly declared to be the purchaser, and the thing sold is adjudicated to him. LSA-C.C. art. 2607. Diane *1215 Breaux, the deputy calling the auction, heard Hebert’s bid. The testimony of both deputies indicates that Breaux announced Hebert’s bid while looking at Larke because Breaux was expecting a response from Larke. From Breaux’s point of view, there was little probability that a higher bid was forthcoming when she closed the bidding.
The trial court found that Larke was willing to go considerably higher than his $1,000.00 initial bid, and that the sale was made at inadequate price, due to an error, which if not corrected, would cause serious and unjust loss to the debtor. The trial court relied heavily on Ragusa v. Greco, 171 La. 686, 131 So. 849 (1930) as legal support in reaching its decision. However, the case is factually distinguishable. In Ragusa, the sheriff conducting the auction failed to see or hear a bidder who was actively attempting to get his bid accepted. In contrast, Breaux made a conscious effort to allow Larke an opportunity to respond, which he failed to do. Conservative Homestead Assoc. v. Hyman, 175 La. 296, 143 So. 269 (1932) is a more factually aligned case. In Hyman, the plaintiff became confused during the course of the auction and stopped bidding on the mistaken belief that the highest bid was his own. The court in Hyman upheld the sheriff’s sale stating that neither the sheriff nor the winning bidder were operating under any error of law or fact, when the bidder made the offer and it was converted into a contract by its acceptance by the sheriff.
Here, the trial court was concerned that the sale of the property at such an inadequate bid would cause serious and unjust loss to the debtor. However, the legislature has provided protection for debtors such as the Cooks. In 1934, the legislature enacted LSA-R.S. 13:4106, which protects debtors from deficiency judgments if the property is sold without appraisal, as in the present case.
In sum, we cannot agree with the trial court that the sheriff’s sale should be annulled and set aside. In light of Larke’s actions, which contributed significantly to his failure to notice Hebert’s bid, we find that the strong public policy in favor of upholding judicial sales outweighs any hardship this particular plaintiff will suffer.
For the reasons stated, the judgment of the trial court is reversed. Costs of this appeal are taxed to plaintiff.
REVERSED AND RENDERED.