I t STEWART, Judge.
This appeal arises from a judicial sale of immovable property. Following the sale, the plaintiff, Cut-Off, Inc., (“Cut-Off’), brought this suit to have the sale set aside, alleging a mistake in price. The trial court ruled in favor of Cut-Off and ordered the sale set aside. The defendant, Richard Dunmore, appeals the trial court’s ruling. For the following reasons, we reverse and reinstate the sale.
FACTS
Cut-Off held a promissory note with a remaining indebtedness of $17,475.70 plus interest. The note was secured by a mortgage over land owned by the estate of Eliza Jackson. On October 19, 1999, Cut *262 Off filed a petition for executory process naming Clyde Johnson and the estate of Eliza Jackson as defendants. A writ of seizure was issued on October 22, 1999, seizing land owned by Clyde Johnson and the estate of Eliza Jackson in Tensas Parish, to wit:
Lot 20 as shown on the plat of survey for Dr. R.R. Avery of unimproved property located in Section 3 and 70, T. 13 N., R. 12 E., Tensas Parish, Louisiana, made by Carl D. Ingram, Registered Surveyor, date February 3, 1978, and recorded on October 30, 1978 in Notarial Book 36, at page 795 of Notarial Records of Tensas Parish, Louisiana.
The property was sold without benefit of appraisal at a sheriffs sale on December 22, 1999, after proper notice and publication. The sale was held in the historic Tensas Parish courthouse. Donnie Eller-man, an attorney, was there on behalf of Cut-Off to ensure that the sale was properly conducted and that the best price was obtained. Ellerman participated in the bidding on behalf of Cut-Off.
|?When the bidding began, Richard Dun-more made the first bid of $1,000. Eller-man countered with “21” and told Dun-more that he could have the property for “25.” Dunmore then bid “23,” Ellerman countered with “24,” and then Dunmore gave the final bid of “25.” The property was sold to Dunmore at a price of $2,500.
Ellerman believed that the selling price was $25,000 until he received a check for $1,741.70, the amount of proceeds due his client, Cut-Off. Ellerman immediately realized that he must have misunderstood the bidding sequence and filed a rule to have the sale set aside and the property adjudicated to CuL-Off, the high bidder at $24,000.
Citing three reasons, the trial court ruled in Cut-Offs favor and set aside the sale. First, the trial court found that a mistake in price had occurred and that such was a substantive defect. Second, the trial court found that the sale price of $2,500 was grossly inadequate. Third, the trial court found that $2,500 was not the highest price for which the property could be sold.
Rather than adjudicating the property to Cut-Off, the trial court ordered a new sale. Dunmore filed this appeal, asserting that the trial court erred in setting aside a valid judicial sale, and he obtained an injunction to prevent sale of the property pending the outcome of his appeal.
DISCUSSION
The trial court cited two cases in support of its ruling. The first case cited was Blanks v. Farmers’ Loan & Trust Co., et al., 122 F. 849 (5th Cir.1903), for the principle that inadequacy of price is not a basis for setting aside a judicial sale unless the price is so gross as to shock the sense of Injustice or additional circumstances make it inequitable to allow the sale to stand. The second case cited was Ragusa v. Greco, 171 La. 686, 131 So. 849 (La.1930), in which a judicial sale was set aside because the property was sold at an inadequate price and not to the highest bidder. Property worth $8,000 was adjudicated to Ra-gusa for $1,000. Greco sought to have the sale set aside, alleging that the deputy sheriff conducting the sale failed to hear or observe a higher bid from a bidder who was present and willing to go up to $4,000. Finding these facts established, the court set the sale aside and noted that a valid auction requires sale to the highest bidder and for the highest price that can be obtained, even where property is sold without appraisement.
Upon our review of the record, particularly the transcript of the hearing, we find that the facts of Ragusa v. Greco, supra, are distinguishable from the facts at issue. *263 Dunmore’s testimony was that he bid in the hundreds, with his first bid being $1,000 and his final bid being $2,500. Dunmore testified that he would not have had the money to bid up to $25,000.
Carrie Gregory, the civil deputy who conducted the sale, understood the bidding to be in the hundreds, not in the thousands. She testified that Dunmore bid $1,000 and that he was the last to bid at $2,500. Although Gregory was aware that the writ had a face value of $17,475.70, she testified that this value is often not an important factor at sales. It was also stated at the hearing that the notes in the sheriffs sale file indicated that the bidding was as understood by Dunmore and Gregory, with Dunmore Rbidding $1,000, followed by Ellerman’s bid of $2,100, and Dunmore’s final bid of $2,500.
Ellerman, who has a “pretty serious hearing loss” and wears hearing aids, testified that he misconstrued the first bid, believing it to have been $10,000. He then entered a final bid of “24,” intending it to be $24,000. He told Dunmore that he could have it at “25,” meaning $25,000. Ellerman did not realize that the sheriffs deputy, Gregory, had construed Dun-more’s bid as $2,500 until he received the proceeds.
Unlike in Ragusa v. Greco, supra, wherein the deputy failed to observe or hear a legitimate bid for a higher price, the facts in the case sub judice are that the deputy heard all bids entered and adjudicated the property to the final high bidder at “25.” Both Gregory and Dun-more understood the bid to be $2,500. Only Ellerman mistakenly believed the bid to be $25,000. Although the trial court framed the issue as one of mistake of price, we believe that the issue is better framed as mistake of a competing bidder as in Conservative Homestead Ass’n. v. Hyman, 175 La. 296, 143 So. 269 (La.1932).
In Conservative Homestead Ass’n v. Hyman, supra, Benson claimed that he was the last and highest bidder after the property was adjudicated to another at a price of $18,000, an amount considerably less than what the property was worth. Benson apparently believed that he had been the high bidder at $18,000. The court reasoned that a contract was entered into when the sheriff accepted the bid of $18,000 offered by Wainer, to whom the property was adjudicated. Neither Wain-er nor the sheriff was operating under an error of law or fact when the bid was made and accepted. The |Bcourt refused to set aside the sale. Ragusa v. Greco, supra, was distinguished as a case involving both an error of fact and of law by the sheriff in not adjudicating the property to the highest bidder whom he failed to observe.
In the case sub judice, we do not find the error of the competing bidder, Eller-man, sufficient to set aside the sale. No error was made on the part of either Gregory or Dunmore; the error was Ellerman’s. A similar situation was presented more recently in Mellon Financial Services Corp. No. 7 v. Cook, 585 So.2d 1213 (La.App. 1st Cir.1991). Larke, an attorney for the plaintiff, attended a sheriffs sale of immovable property valued at $18,000. Larke opened the bidding at $1,000. A second bid of $2,000 was entered by Hebert and accepted by the deputy, who called the bid three times and then stated that the property was sold. Larke believed that he had the successful bid, but was informed otherwise. He claimed that he had not heard the second bid and asked that the bidding be reopened. The request was refused. It was revealed at trial that Larke is deaf in his right ear and that after making the initial bid of $1,000, he began referring to his papers rather than paying attention to the auction. It was also revealed that the deputy, expecting another bid, announced Hebert’s bid while *264 looking at Larke. Relying on Ragusa v. Greco, supra, the trial court set aside the sale upon finding that Larke was willing to go higher than his initial bid of $1,000 and that the sale was made for an inadequate price. The appellate court found Ragusa factually distinguishable and reversed the trial court. It reasoned that Larke’s actions contributed to his failure to notice Hebert’s | ñbid, and found that “the strong public policy in favor of upholding judicial sales outweighs any hardship this particular plaintiff will suffer.”
Finding the facts of Mellon, supra, factually analogous and the reasoning sound, we reverse the trial court’s judgment setting aside the judicial sale and ordering a new sale. The error here was due to Ellerman’s misconstruing of the bidding sequence. This unilateral bidder error does not justify setting the sale aside.
CONCLUSION
For the reasons stated, the judgment of the trial court is reversed with costs of the this appeal assessed to plaintiff, Cut-Off, Inc.
REVERSED AND RENDERED.